UNITED STATES U.S. DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHELDON GOLDSTEIN,

                Plaintiff,

       -against-

MONTEFIORE MEDICAL CENTER and
MATTHIAS EIKERMANN,

              Defendants.

Case No. 22-cv-06723

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LITTLER MENDELSON, P.C.
William J. Anthony
Melissa Friedland
900 Third Avenue
New York, New York 10022-4834
(212) 583-9600

*Attorneys for Defendants*

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................................. 1

II.     STATEMENT OF FACTS ..................................................................................... 2

        A.      Montefiore Hires Plaintiff................................................................. 3

                1.      Plaintiff's Application for Promotions in 2020 and 2021 ........................ 3

                2.      Dr. Naum Shaparin Becomes Interim Chair of Anesthesiology
                        Department ................................................................................. 4

                3.      Montefiore Receives Employee Complaints Concerning Plaintiff............ 4

                4.      Plaintiff Requests a Reasonable Accommodation Not to Take
                        Overnight Calls and Montefiore Grants the Accommodation ................. 5

                5.      Dr. Eikermann Becomes Chair of the Anesthesiology Department .......... 5

                6.      Plaintiff's October 3, 2021 Meeting with Dr. Eikermann, Dr. Leff
                        and Dr. Straker ............................................................................ 7

                7.      Montefiore Receives Another Employee Complaint Regarding
                        Plaintiff ..................................................................................... 8

                8.      Plaintiff's November 30, 2021 Meeting With Dr. Eikermann, Dr.
                        Straker and Mr. Felder ................................................................. 8

                9.      Plaintiff Resigns .......................................................................... 9

III.    ARGUMENT ....................................................................................................... 9

        A.      PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF
                DISABILIY DISCRIMINATION UNDER THE ADA, THE NYSHRL
                OR THE NYCHRL ....................................................................... 10

        B.      PLAINTIFF CANNOT ESTABLISH A FAILURE TO
                ACCOMMODATE CLAM ............................................................... 16

        C.      PLAINTIFF CANNOT ESTABLISH A HOSTILE WORK
                ENVIRONMENT CLAIM BASED ON HIS DISABIITY UNDER THE
                ADA, NYSHRL AND NYCHRL ...................................................... 18

                1.      The Conduct Alleged Did Not Occur "Because of" Plaintiff's
                        Disability .................................................................................. 19

# TABLE OF CONTENTS
### (CONTINUED)

PAGE

2.     The Conduct Alleged Does Not Rise to the Level of "Severe or Persuasive" or Even the Lesser Standard of "Petty Slights or Trivial Inconvenience"................................................................ 20

3.     Even If Plaintiff Can Establish A Hostile Work Environment, Defendants Are Still Entitled to Summary Judgment Based on the Faragher/Ellerth Defense. ....................................................... 22

D.     PLAINTIFF CANNOT ESTABLISH A CONSTRUCTIVE DISCHARGE CLAIM.................................................................................................. 24

E.     THE CLAIMS AGAINST INDIVIDUAL DEFENDANT DR. EIKERMANN SHOULD BE DISMISSED ....................................... 28

IV.    CONCLUSION............................................................................................. 29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Addo v. N.Y. Health & Hosps. Corp.*,
    No. 15-CV-8103 (RA), 2017 U.S. Dist. LEXIS 176916 (S.D.N.Y. Oct. 25,
    2017) .................................................................................................................9

*Alfano v. Costello*,
    294 F.3d 365 (2d Cir. 2002).........................................................................18, 20

*Allen v. Cuomo*,
    100 F.3d 253 (2d Cir. 1996)...............................................................................9

*Alshami v. City Univ. of N.Y.*,
    No. 160183/2019, 2021 N.Y. Misc. LEXIS 3108 (Sup. Ct., N.Y. Cnty. June 2,
    2021) ................................................................................................................21

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...........................................................................................9

*Black v ESPN, Inc.*,
    70 Misc. 3d 1217, 2021 NY Slip Op 50118(U) (Sup. Ct., N.Y. Cnty. Feb. 19,
    2021) ................................................................................................................18

*Brennan v. Metro. Opera Ass'n, Inc.*,
    192 F.3d 310 (2d Cir. 1999)..............................................................................19

*Brown v. The Pension Bds.*,
    488 F. Supp. 2d 395 (S.D.N.Y. 2007).................................................................17

*Burgess v. The New Sch. Univ.*,
    No. 23-cv-4944, 2024 WL 4149240 (S.D.N.Y., Sep. 11, 2024) ...........................28

*Campbell v. N.Y.C. Transit Auth.*,
    93 F. Supp. 3d 148, 173 (E.D.N.Y.  2015) ........................................................22

*D' Amico v. City of New York*,
    132 F.3d 145 (2d Cir. 1998).................................................................................9

*Davis v. N.Y.C. Dep't of Educ.*,
    804 F.3d 231 (2d Cir. 2015)...............................................................................10

*Demoret v. Zegarelli*,
    451 F.3d 140 (2d Cir. 2006)...............................................................................22

# TABLE OF AUTHORITIES
(CONTINUED)

*DiNome v. Cordis U.S. Corp.*,
    No. 23-CV-11173, 2024 WL 3888799 (SDNY, Aug. 21, 2024)..............................................28

*Eichler v. Am. Int'l Grp., Inc.*,
    No. 05-CIV-5167 (FM), 2007 WL 963279 (S.D.N.Y. Mar. 30, 2007) ..................................24

*Espinoza v CGJC Holdings LLC*,
    No. 23-cv-9133, 2024 WL 3520662 (S.D.N.Y. July 23, 2024)..............................................18

*Felty v. Regeneron Pharms., Inc.*,
    No. 18 CIV. 5667 (NSR), 2021 WL 860379 (S.D.N.Y. Mar. 8, 2021)..................................24

*Ferrara v. Sterling, Inc.*,
    No. 23-0454-cv, 2024 WL 485742 (2d Cir. Feb. 8, 2024) ................................................22, 24

*Flaherty v. Metromail Corp.*,
    235 F.3d 133 (2d Cir. 2000)................................................................................................24

*Forrest v. Jewish Guild for the Blind*,
    3 N.Y.3d 295, 312 (2004)....................................................................................................22

*Fu v. Consol. Edison Co. of N.Y.*,
    No. 16-CV-04017 (RA), 2020 U.S. Dist. LEXIS 54004 (S.D.N.Y. Mar. 25,
    2020), *aff'd*, 855 F App'x 787 (2d Cir. 2021) .............................................................9

*Garcia v. Dep't of Corr. Servs.*,
    No. 05 Civ. 5138 (SAS), 2006 WL 3549764 (S.D.N.Y. Dec. 5, 2006)..................................11

*Gorman v. Covidien, LLC*,
    146 F. Supp. 3d 509 (S.D.N.Y. 2015).......................................................................................26

*Green v N.Y.C. Transit Auth.*
    No. 15-CV-8204, 2020 WL 5632743 (S.D.N.Y. Sept. 21, 2020)..........................................23

*Guglietta v. Meredith Corp.*,
    301 F. Supp. 2d 209 (D. Conn. 2004)......................................................................................26

*Gupta v. N.Y.C. Sch. Const. Auth.*,
    No. 04 CV 2896 (NGG) (LB), 2007 WL 1827418 (E.D.N.Y. June 25, 2007),
    *aff'd*, 305 F. App'x 687 (2d Cir. 2008).................................................................................14

*Hawkins-El v. N.Y.C. Transit Auth.*,
    No. 18-CV-7167, 2021 WL 4222400 (E.D.N.Y. Sept. 16, 2021) ..........................................18

# TABLE OF AUTHORITIES
## (CONTINUED)

**PAGE**

*Jackson v Sleepy's, LLC*,
   No. 13-CV-2086, 2016 WL 1223452 (E.D.N.Y., Mar. 29, 2016)..........................................26

*Jackson-Lipscomb v. City of N.Y.*,
   No. 17-CV-10093, 2022 WL 953048 (S.D.N.Y. Mar. 30, 2022) ..................................28

*Jadallah v N.Y.C. Dep't of Educ.*,
   No. 21-cv-6390, 2024 U.S. Dist. LEXIS 58410 (E.D.N.Y. Mar. 28, 2024)..........................18

*James v. N.Y.C. Transit Auth.*,
   19-CV-2372 (ALC), 2022 WL 976368 (S.D.N.Y. Mar. 31, 2022) ........................................10

*Kelly v. N.Y. State Office of Mental Health*,
   200 F. Supp. 3d 378 (E.D.N.Y. 2016) ..................................................................25

*Leopold v. Baccarat, Inc.*,
   239 F.3d 243 (2d Cir. 2001)................................................................................23

*Littlejohn v. City of N.Y.*,
   795 F.3d 297 (2d Cir. 2015)................................................................................14

*Lucenti v. Potter*,
   432 F. Supp. 2d 347 (S.D.N.Y. 2006)..........................................................14, 22

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)..............................................................................................9

*McCrain v. Metro. Transportation Auth.*,
   No. 17-CV-2520-RA, 2020 WL 1285634 (S.D.N.Y. Mar. 18, 2020) ...................................10

*McDonnell-Douglas Corp. v. Green*,
   411 U.S. 792 (1973)............................................................................................10

*McMillian v. City of N.Y.*,
   711 F.3d 120 (2d Cir. 2013)................................................................................16

*Miller v. Batesville Casket Co., Inc.*,
   312 Fed. App'x 404 (2d Cir. 2009) ........................................................................26

*Molina v John Jay Inst. for Justice*,
   No. 23 Civ. 1493, 2024 WL 4276913 (S.D.N.Y. Sept. 24, 2024)..........................................28

*O'Neal v. State Univ. of New York*,
   No. 01-CV-7802 (DGT), 2006 WL 3246935, at *12 (E.D.N.Y. Nov. 8, 2006)....................25

## TABLE OF AUTHORITIES
(CONTINUED)

**PAGE**

*O'Neil-Marino v. Omni Hotels Mat. Corp.*,
    2001 U.S. Dist. LEXIS 2138, at *20 (S.D.N.Y. Mar. 2, 2001) ...............................................26

*Owens v. Napolitano*,
    No. 05-CV-5987, 2011 WL 1327118 (E.D.N.Y. Mar. 31, 2011)...........................................19

*Parsons v. J.P. Morgan Chase Bank, N.A.*,
    No. 16-CV-0408 (NGG) (JO), 2018 WL 4861379 (E.D.N.Y. Sep. 30, 2018) ......................10

*Pasquarello v Crothall Healthcare, Inc.*,
    No. 21-cv-08732, 2023 WL 5714165 (S.D.N.Y., Sept. 5, 2023) ...........................................26

*Pena v. Brattleboro Retreat*,
    702 F.3d 322, 325 (2d Cir. 1983)...........................................................................................27

*Petrosino v. Bell Atl.*,
    385 F.3d 210 (2d Cir. 2004).....................................................................................................24

*Ramirez v. Temin & Co.*,
    No. 20 Civ. 6258, 2021 WL 4392303 (S.D.N.Y. Sept. 24, 2021)..........................................25

*Rivera v. Greater Hudson Valley Health Sys.*,
    No. 21-cv-01324 (NSR), 2023 WL 2588308 (S.D.N.Y. Mar. 21, 2023) ...............................14

*Royall v. City of Beacon*,
    No. 24-cv-3 (KMK), 2024 WL 4266546 (S.D.N.Y. Sept. 23, 2024) .....................................15

*Sank v. City Univ. of N.Y.*,
    No. 94 Civ. 0253 (RWS), 2003 WL 1807142 (S.D.N.Y. Apr. 7, 2003)................................12

*Schiano v. Quality Payroll Sys.*,
    445 F.3d 597 (2d Cir. 2006).....................................................................................................24

*Shankar v. Accenture LLP*,
    No. 21-cv-3045 (PAE) (OTW), 2023 WL 2908660 (S.D.N.Y. Feb. 14, 2023) .....................16

*Smith v. N.Y. Presbyterian Hosp.*,
    440 F.Supp.3d 303 (S.D.N.Y. 2020)..................................................................................11, 12

*Stetson v. NYNEX Serv. Co.*,
    995 F.2d 355 (2d Cir. 1993)...............................................................................................25, 26

*Stinnett v. Delta Air Lines, Inc.*,
    No. 18 Civ. 2704 (DLI), 2019 WL 1493224, at *9 (E.D.N.Y. Mar. 31, 2019).....................28

# TABLE OF AUTHORITIES

## (CONTINUED)

**PAGE**

*Tepperwien v. Entergy Nuclear Operations, Inc.*,
    663 F.3d 556 (2d Cir. 2011) ...................................................................................... 15

*Thomson v. Odyssey House*,
    No. 14-cv-3857, 2015 WL 5561209 (E.D.N.Y. Sept. 21, 2015) ............................ 14

*Torre v. Charter Commc'ns, Inc.*,
    493 F. Supp.3d 276 (S.D.N.Y. 2020) ...................................................................... 11

*Weekes v. Jetblue Airways Corp.*,
    No. 21-CV-1965 (MKB), 2022 WL 4291371 (E.D.N.Y., Sept. 16, 2022) ........... 10, 11

*Weeks v. N.Y. State Div. of Parole*,
    273 F.3d 76 (2d Cir. 2001) ...................................................................................... 14

*Wells v. Achievement Network*,
    18 Civ. 6588 (KPF), 2021 WL 810220 (S.D.N.Y. Mar. 2, 2021) ......................... 17

*Whidbee v. Garzarelli Food Specialties, Inc.*,
    223 F.3d 62, 73 (2d Cir. 2000) ............................................................................ 24, 27

*Wilson v. Consolidated Edison Co. of N.Y.*,
    No. 96-CV-7546 (RCC), 2000 WL 335733 (S.D.N.Y. Mar. 30, 2000) ................. 21

*Wright v, City of N.Y.*,
    No. 23 Civ. 3149 (KPF), 2024 WL 3952722 (S.D.N.Y. Aug. 27, 2024) .............. 16

*Wright v. Goord*,
    554 F.3d 255 (2d Cir. 2009) ...................................................................................... 9

*Yennard v. Boces*,
    353 F. Supp. 3d 194 (N.D.N.Y. 2019) ..................................................................... 17

*Young v. Limited Brands*,
    No. 11-CV-2927, 2013 WL 5434149 (S.D.N.Y. Sept. 25, 2013) ........................... 19

**Statutes**

Americans with Disabilities Act of 1990 (ADA) ................................................. *passim*

New York City Human Rights Law (NYCHRL) ................................................. *passim*

New York State Human Rights Law (NYSHRL) ................................................. *passim*

## TABLE OF AUTHORITIES
(CONTINUED)

PAGE

**Other Authorities**

Fed. R. Civ. P. 56(a) ....................................................................................................................9

Local Rule 56.1 ........................................................................................................................2, 12

Defendants Montefiore Medical Center (Montefiore) and Matthias Eikermann ("Dr. Eikermann") (collectively, "Defendants") submit this memorandum of law in support of their motion for summary judgment seeking to dismiss all claims in the Complaint filed by Dr. Sheldon Goldstein ("Plaintiff").

## I.    PRELIMINARY STATEMENT

Plaintiff voluntarily resigned his employment after being granted the only accommodation he sought for a recently diagnosed condition that did not prevent or interfere with the performance of his job duties other than his ability to take "on-call" duty. Plaintiff alleges that he was subjected to discrimination and harassment because of his disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").[1] He asserts these claims against Montefiore Medical Center, and Dr. Eikermann but lacks evidence to support his allegations.

As demonstrated herein, the material facts are not in dispute, and the undisputed facts prove Plaintiff cannot establish that he was discriminated against and/or subjected to a hostile work environment because of his alleged disability. In fact, the evidence shows that Plaintiff was treated in the same manner both before and after he requested a reasonable accommodation and Dr. Eikermann became Chair of the Department, which happened almost simultaneously. Montefiore granted Plaintiff's reasonable accommodation request to not work overnight shifts and no one at Montefiore, including Dr. Eikermann made comments regarding Plaintiff's alleged disability, in fact it was never spoken about, nor does Plaintiff allege otherwise. Simply put there was no constructive discharge, Plaintiff voluntarily chose to resign. While Plaintiff was unhappy that even with the new Chair, he was not promoted yet again, and Montefiore continued to deny him

---

[1] While Plaintiff asserts a retaliation claim in his November 12, 2024 opposition to Plaintiff's November 1, 2024 pre-motion letter for Summary Judgment, there is no such claim in this lawsuit.

clinical time, these actions were identical to the actions taken prior to him disclosing that he had a medical condition. Thus, Plaintiff cannot, as a matter of law, establish that those actions were because of his claimed medical condition,   Accordingly, Plaintiff cannot prevail on any of his claims, and Defendants' motion for summary judgment should be granted.

## II.    STATEMENT OF FACTS[2]

The undisputed facts are set forth in Defendants Local Rule 56.1 Statement of Facts ("56.1"), dated September 25, 2024, as well as the Declaration of William J. Anthony, dated December 17, 2024[3] ("Anthony Decl."), and the exhibits annexed thereto, the Declaration of Dr. Matthias Eikermann dated September 25, 2024 and the Declaration of Dr. Tracey Straker dated September 25, 2025.  For the Court's convenience, a summary of the most salient facts is provided below.

Montefiore, which is located in the Bronx, New York, is a comprehensive non-profit medical center and healthcare management company.  Montefiore is comprised of several hospitals, a network of neighborhood health centers, a range of ambulatory specialty services, home health care, and rehabilitation centers.  *See* 56.1 ¶1.

Montefiore maintains non-discrimination and anti-harassment policies, which include methods to report incidents of discrimination and harassment.  56.1 ¶2.  Montefiore also maintains a Non-Discrimination Against and Accommodation of Individuals with Disabilities Policy which sets forth the procedure for requesting an accommodation and states that Montefiore will provide reasonable accommodations, provided the accommodation does not constitute an undue hardship or pose a threat to the health and safety of the individual or others in the workplace.  56.1 ¶3.  As per the Non-Discrimination Against and Accommodation of Individuals with Disabilities Policy,

---

[2] The facts set forth herein are conceded only for the purposes of this motion.
[3] The Declaration of William J. Anthony, dated September 25, 2024, was revised to include one additional exhibit.

individuals who require an accommodation should contact Employee and Labor Relations, Occupational Health Services (OHS) to request an accommodation.  56.1 ¶4.

### A.    Montefiore Hires Plaintiff

On September 30, 2013, Elise Delphin, former Chair of the Department of Anesthesiology, hired Plaintiff and he began working as a full-time salaried attending physician in the Department of Anesthesiology.  56.1 ¶5.

At the time of Plaintiff's hire, and during his employment, Plaintiff was the CEO for Coagulation Sciences, LLC, an independent, non-Montefiore company he formed for the purpose of developing a new type of blood testing device.  56.1 ¶7.

Shortly after Plaintiff began his employment, Dr. Delphin provided Plaintiff a certain amount of non-clinical time per month.  56.1 ¶8.  In 2020, Dr. Delphin took away Plaintiff's non-clinical time because Plaintiff needed to be "more productive."  56.1 ¶9.

#### 1.    *Plaintiff's Application for Promotions in 2020 and 2021*

The Albert Einstein College of Medicine ("Einstein") has processes and procedures for individuals seeking a promotion to Professor on the Clinical Educator Track. 56.1 ¶11.  The Chair of the Committee for Academic Promotions ("CAP") was (and is) Dr. Jonathan Leff, Professor, Vice Chair of Professional Affairs, Chief of Cardiac Anesthesiology, Co-Director of the Cardiovascular Center at Montefiore.  56.1 ¶12.

In 2020, Plaintiff submitted an application for promotion from Associate Professor to Professor on the Clinician Educator Track. 56.1 ¶23.  In 2020, the members of the CAP were: Dr. David Adams, Dr. Elise Delphin, Dr. Karina Gritsenko, Dr. Vilma Joseph, Dr. Galina Leyvi, Dr. Marina Moguilevitch, Dr. Irene Osborn, Dr. Sujatha Rachachandran, Dr. Shamantha Reddy, Dr. Naum Shaparin, Dr. Tracey Straker and Samantha Rawana.  56.1 ¶25.  Dr. Naum Shaparin was assigned to present Plaintiff to the CAP. 56.1 ¶26.  At the CAP meeting, Dr. Shaparin

recommended that Plaintiff not be submitted for promotion, which was **unanimously** supported by the CAP, and "blocked" by Dr. Delphin, the Chair of the Department, as per Plaintiff.    56.1 ¶27.

On July 15, 2020, Dr. Leff communicated this decision via email to Plaintiff, copying Dr. Delphin. 56.1 ¶29.  Thereafter, on August 25, 2020, Plaintiff submitted a lengthy email to Dr. Leff requesting that the Promotions Committee reconvene to reconsider its decision.  56.1 ¶31.    On that same day, Dr. Leff responded via email that the decision was unanimous and would remain final. 56.1 ¶32.

In 2021, Plaintiff submitted his materials to be considered for a promotion from Associate Professor to Professor on the Clinician Educator Track.  56.1 ¶34.  The CAP never reviewed Plaintiff's 2021 promotion materials.  56.1 ¶35.

### 2.    *Dr. Naum Shaparin Becomes Interim Chair of Anesthesiology Department*

In January 2021, Dr. Naum Shaparin was appointed interim chair upon Dr. Delphin's retirement. 56.1 ¶36.  Plaintiff met with Dr. Shaparin to request non-clinical time, which Dr. Shaparin denied, and as per Plaintiff stated "We're in a pandemic. I have to run the clinical service. I am not giving non-clinical time."  56.1 ¶39.

### 3.    *Montefiore Receives Employee Complaints Concerning Plaintiff*

In early January 2021, Montefiore became aware of employee complaints concerning Plaintiff where Plaintiff exhibited a pattern of inappropriate communication and unprofessional behavior.  56.1 ¶47.  As a result, in March of 2021, it was recommended by Andrew Felder, Doris Poma and Dr. Shaparin that Plaintiff be sent for coaching.  56.1 ¶49.  Plaintiff was unable to start the coaching until after May 4 because he was on leave.  56.1 ¶50.

**4.** ***Plaintiff Requests a Reasonable Accommodation Not to Take Overnight Calls and Montefiore Grants the Accommodation***

Plaintiff, like all other general anesthesiologists in his department (including the Chair) was required to take overnight calls in the hospital. 56.1 ¶52. Glenn Mann, the former Director of Scheduling and Director of Pediatric Anesthesia was responsible for making the schedules for the Anesthesiology Department in 2021 and 2022. 56.1 ¶54.

On April 19, 2021, Dr. Michael Thorpy emailed Dr. Straker and Dr. Eikermann a medical note stating that Plaintiff should not be taking overnight calls because he required regular sleep wake patterns for optimal health. 56.1¶58. Montefiore granted Plaintiff's reasonable accommodation and Plaintiff was not required to take overnight calls from May through December of 2021. 56.1 ¶¶ 61, 62, 65.

In December of 2021, Plaintiff learned he was scheduled to work two overnight calls in January. As a result, on December 28, 2021, Dr. Thorpy submitted another note stating that Plaintiff should not be taking overnight calls. Plaintiff, however, agreed to cover the two January overnight calls and requested that the Saturday and Sunday daytime formula be instituted starting in February. 56.1 ¶¶ 66-68.

On December 29, 2021, Dr. Straker emailed Plaintiff about the President's Day weekend coverage for which he was assigned M2 coverage for the Saturday through Monday (2/19-2/21) via the Lottery, and asked Plaintiff whether he was able to keep this commitment. Plaintiff responded stating "I understand the situation. I appreciate this was assigned by the lottery in the past, so rest assured I will cover the M2 for the holiday weekend. 56.1 ¶¶69-71.

**5.** ***Dr. Eikermann Becomes Chair of the Anesthesiology Department***

On April 15, 2021, Dr. Eikermann became the Chair of the Anesthesiology Department. 56.1 ¶72. On April 28, 2021, Dr. Eikermann had his first meeting with Plaintiff. At this meeting,

Plaintiff was "direct" and requested the following: (1) a promotion from Associate Professor to Professor on the Clinician Educator Track; (2) non-clinical time; (3) appointment to the Vice Chair of Faculty Development (the position which was held by Dr. Leff); and (4) reinstatement of an employee who was taken off leadership by Dr. Delphin.  56.1 ¶75.

Dr. Eikermann listened to Plaintiff's requests, and advised Plaintiff that he would look into them, discuss with other members of the Executive Team and get back to him.   56.1 ¶76.  At that time the members of the Executive Team were: Dr. Eikermann, Dr. Tracey Straker,  Dr. Jonathan Leff, Andrew Felder, Dr. Naum Shaparin and Dr. Sujatha Ramachandran, Vice Chair for Education and Residency Program Director, Associate Professor of Anesthesiology. 56.1 ¶77.

During Dr. Eikermann's meetings with the Executive Committee, Dr. Eikermann learned the reasons why Plaintiff did not receive the promotion in 2020 and why Dr. Delphin took away his non-clinical time.  He also learned about Plaintiff's other company, and that Montefiore believed Plaintiff was using non-clinical time to help further this company, as opposed to using his non-clinical time for the benefit of Montefiore.  Dr. Eikermann also learned about the prior complaints concerning Plaintiff and that Plaintiff was scheduled to receive formal coaching from Nancy Jacoby, an outside coach.   56.1 ¶¶82-83.

Plaintiff received two coaching sessions.  Dr. Eikermann discontinued Plaintiff's coaching sessions after Plaintiff's coach indicated that she believed the coaching would not be successful. 56.1 ¶¶84-85.  On May 16, 2021, Plaintiff emailed Dr. Straker to advise her that his "grand rounds were a big hit."  56.1 ¶81

At the end of July through the beginning of September 2021, as a result of the receipt of employee complaints discussed above, repeated concerns about his attitude and communication style, his defensive behavior and lack of productivity, Dr. Eikermann began discussing with Dr. Leff, Mr. Felder, Ms. Poma, Dr. Straker, and Montefiore's Legal Department issuing  Plaintiff a

Focused Professional Practice Evaluation ("FPPE"). 56.1 ¶87.

As Dr. Eikermann was still relatively new, he decided to hold off issuing the FPPE until he was able to personally evaluate Plaintiff's work performance, attitude and interactions over an extended period of time.  56.1 ¶88.

Around the same time, Dr. Eikermann was also having discussions with Dr. Jeffrey Weiss, Senior Vice President for Medical Affairs and Montefiore's Legal Department to decide whether Plaintiff's application for promotion should be considered as a result of his personnel issues.  56.1 ¶89.

6.    ***Plaintiff's October 3, 2021 Meeting with Dr. Eikermann, Dr. Leff and Dr. Straker***

On October 3, 2021, Plaintiff secretly tape recorded his meeting with Dr. Eikermann, Dr. Leff and Dr. Straker. 56.1 ¶90.  During this October 3, 2021 meeting, Dr. Eikermann highlighted Plaintiff's strengths stating that Plaintiff was a great clinician, very experienced, good clinician scientist, and talented with research.  Dr. Eikermann also informed Plaintiff at this October 3, 2021 meeting that he would not be considered for promotion in 2021.  56.1 ¶¶94-96.

Dr. Eikermann advised Plaintiff to meet with him every three months and informed Plaintiff that he would try to help him, stating "and you can count in [sic] me that I will support you." In response, Plaintiff stated "I'm appreciative of meeting with you about every three months. I think that would be terrific." Plaintiff was also "pleased" that Dr. Eikermann gave him some ideas about how to ensure he would get promoted next year."  56.1 ¶¶99-100.

At the end of the conversation, Dr. Eikermann informed Plaintiff that he told Dr. Leff not to send Plaintiff a rejection letter for this year, because he wanted to meet with Plaintiff and he specifically stated: "we support you and whatever you feel that we really deeply care about you because we think you are good and you're—you're a resources. We don't want to lose you.  We

want to help you.  56.1 ¶101.

At no time during this conversation did Dr. Eikermann raise his voice, become aggressive, call him names, and/or refer to Plaintiff's disability.  56.1 ¶103.

### 7.    *Montefiore Receives Another Employee Complaint Regarding Plaintiff*

On November 2, 2021, Dr. Nicole Nevadunsky emailed a complaint about Plaintiff's inappropriate behavior towards her, residents and a sub-intern during a procedure.  She also attached statements from those that witnessed the incident.  56.1 ¶104.

### 8.    *Plaintiff's November 30, 2021 Meeting With Dr. Eikermann, Dr. Straker and Mr. Felder*

On November 30, 2021, Plaintiff once again, secretly tape recorded his meeting with Dr. Eikermann, Dr. Straker and Mr. Felder.   During this November 30, 2021 meeting, Dr. Eikermann did not call Plaintiff names, curse at him, refer to his disability or speak to him in an aggressive manner. 56.1 ¶¶111-112.

Dr. Eikermann presented Plaintiff with the FPPE, dated September 10, 2021, which included a Performance Improvement Plan to help remediate these issues.  During the November 30, 2021, meeting, Dr. Eikermann told Plaintiff that he would support him and that Plaintiff can go to him with issues.  56.1 ¶¶114, 118.

Dr. Eikermann also explained to Plaintiff that he did not stay in the chain of commands when he reported Dr. Nevandusky to the Chief of Human Resources.  While Plaintiff can report someone to HR, when it comes to a specific medical issue he should go through Dr. Eikermann, which was confirmed by Mr. Felder.  56.1 ¶119.  Mr. Felder further explained to Plaintiff that there are "absolutely" times to go to HR.  56.1 ¶120.

Following the November 30, 2021 meeting, Plaintiff and Dr. Eikermann communicated regularly via email, telephone and in person.   56.1 ¶122.

### 9.    *Plaintiff Resigns*

On February 13, 2022, Plaintiff provided Dr. Eikermann with his notice of resignation effective April 13, 2022. 56.1 ¶130.

## III.    ARGUMENT

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Addo v. N.Y. Health & Hosps. Corp.*, No. 15-CV-8103 (RA), 2017 U.S. Dist. LEXIS 176916, at *9 (S.D.N.Y. Oct. 25, 2017). Once the movant meets this burden, the opposing party must come forward with specific evidence demonstrating the existence of genuine material facts in dispute. *Fu v. Consol. Edison Co. of N.Y.*, No. 16-CV-04017 (RA), 2020 U.S. Dist. LEXIS 54004, at *18 (S.D.N.Y. Mar. 25, 2020), *aff'd*, 855 F App'x 787 (2d Cir. 2021).

In deciding the motion, although the evidence and the inferences drawn therefrom are to be viewed in the light most favorable to the opposing party, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996). In other words, the nonmoving party must offer some "hard evidence" supporting the claims asserted. *D' Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998). *See also, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Wright v. Goord,* 554 F.3d 255, 266 (2d Cir. 2009).

As demonstrated herein, this case is ripe for summary disposition, and the Defendants' motion to dismiss Plaintiff's claims should be granted to avoid burdening the parties and the Court with an unnecessary trial.

## A. PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF DISABILIY DISCRIMINATION UNDER THE ADA, THE NYSHRL OR THE NYCHRL

Plaintiff cannot establish a prima facie case of disability discrimination under the ADA, the NYSHRL or the NYCHRL.  Plaintiff's ADA, NYSHRL, and NYCHRL discrimination claims are analyzed under the three-step burden-shifting framework established in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Parsons v. J.P. Morgan Chase Bank, N.A.*, No. 16-CV-0408 (NGG) (JO), 2018 WL 4861379, at \*5-6 (E.D.N.Y. Sep. 30, 2018).   This requires Plaintiff to first establish a *prima facie* claim by establishing that (1) the employer is subject to the ADA, NYSHRL and NYCHRL; (2) the plaintiff is disabled within the meaning of the ADA, NYSHRL, NYCHRL or perceived to be so by his employer; (3) he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) he suffered an adverse employment action; and (5) the adverse action was imposed because of his disability. *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015); *James v. N.Y.C. Transit Auth.*, 19-CV-2372 (ALC), 2022 WL 976368, at \*4 (S.D.N.Y. Mar. 31, 2022).   As discussed below, Plaintiff fails on several fronts as a matter of undisputed fact and as a matter of law.   Even, if Plaintiff establishes a *prima facie* case, Defendants then have the burden of articulating a legitimate, non-discriminatory reason for the adverse employment action.  If they do, then Plaintiff must demonstrate that the Defendants' reason is a pretext for discrimination and that the real reason was discrimination.

Under the ADA, a plaintiff must also show that his disability is the but-for cause of the adverse employment action.  *McCrain v. Metro. Transportation Auth.,* No. 17-CV-2520-RA, 2020 WL 1285634, at \*13 (S.D.N.Y. Mar. 18, 2020).  The NYSHRL and the NYCHRL have a more liberal standard where the plaintiff must only "show that the employer treated him or her less well, at least in part for a discriminatory reason." *Weekes v. Jetblue Airways Corp.*, No. 21-CV-1965

(MKB), 2022 WL 4291371, *7 (E.D.N.Y., Sept. 16, 2022)(citations and quotation marks omitted). To establish that he was being treated 'less well,' a plaintiff must merely plausibly allege 'differential treatment that is more than trivial, insubstantial, or petty. *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp.3d 276, 285 (S.D.N.Y. 2020). Again, Plaintiff must connect any such "less well" treatment to his disability. *Weekes*, 2022 WL 4291371 at *7.

As an initial matter, it is highly questionable that Plaintiff can show that he has a disability under the ADA, however, Defendants will focus its arguments on other aspects of the *prima facie* case. *See e.g.*, *Garcia v. Dep't of Corr. Servs.*, No. 05 Civ. 5138 (SAS), 2006 WL 3549764 at *4 (S.D.N.Y. Dec. 5, 2006) (finding that Plaintiff had not shown that he could not function at work, had serious difficulty performing tasks, or was otherwise seriously impaired by his sleep apnea, but rather offered nothing more than a mere grievance against defendants for failing to change his work schedule). Here, Plaintiff merely alleges that he was not able to perform periodic "on call" shifts but asserts no other difficulties performing the essential functions of his position. Thus, Plaintiff is not disabled within the meaning of the ADA.

Assuming, however sleep apnea would be considered a disability under the lesser stringent standards of the NYSHRL and NYCHRL, his claim still fails because he has provided no facts connecting any of the alleged adverse actions to his disability.

It is well settled that an adverse employment action is a "materially adverse change in the terms and conditions of employment." *Smith v. N.Y. Presbyterian Hosp.*, 440 F.Supp.3d 303, 329 (S.D.N.Y. 2020) (citations and quotation marks omitted). To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Here, Plaintiff suffered no "materially adverse" change in the terms and conditions of his employment. In fact, he did not experience any changes in the terms and conditions of his employment upon disclosing his medical condition. Examples of such a change

include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation. *Id.* Plaintiff alleges none of these materially adverse events. Moreover, "not everything that makes an employee unhappy is an actionable adverse action." *Sank v. City Univ. of N.Y.*, No. 94 Civ. 0253 (RWS), 2003 WL 1807142, at *10 n.24 (S.D.N.Y. Apr. 7, 2003).

Plaintiff asserts that Defendants unlawfully discriminated against him because of disability when:

- Defendants excluded Plaintiff from consideration for a promotion from Associate Professor to Professor on the Clinician Educator Track for Einstein.
- Defendants issued Plaintiff an FPPE with a performance improvement plan.
- Dr. Eikermann was aggressive during the October 3, 2021 meeting.
- Dr. Eikermann "boasted" to Plaintiff that he excluded him from consideration from promotion.
- Dr. Eikermann would not provide Plaintiff with non-clinical days.
- Dr. Eikermann insisted that Plaintiff work overnight call.
- Dr. Eikermann threated to fire him without any prior discussion about terminable conduct.
- Dr. Eikermann prevented Plaintiff from speaking during grand rounds.
- Dr. Eikermann told Plaintiff he was not permitted to make complaints to Montefiore's Human Resources Department.

Plaintiff's Counter-Statement to Defendants' Rule 56.1 Statement of Undisputed Material Facts ("Plaintiff's Counter-Statement 56.1") ¶¶ 35, 68, 69, 71, 82, 87, 88, 89, 92, 96, 97, 99, 103, 112, 114, 119, 128.

Here, the only "adverse action" that Plaintiff allegedly suffered was being excluded from consideration for a promotion from Associate Professor to Professor in 2021 for Einstein, the same "adverse action" he suffered the year before and prior to disclosing his alleged disability. Plaintiff fails, however, to demonstrate that his exclusion from consideration for a promotion was because of his disability.

In fact, the undisputed evidence shows that Plaintiff was excluded from consideration for promotion again because of his own actions, including but not limited to: (1) Montefiore's receipt of multiple employee complaints; (2) Plaintiff's need for formal coaching; and (3) Plaintiff's receipt of a FPPE and performance improvement plan, and not because of his disability. (56.1 ¶¶ 47-50, 104-105, 114-117). Moreover, Plaintiff was denied the same promotion a year prior, which was before he disclosed his alleged disability. In other words, he suffered the same fate two years in a row, one before he had a disability, and again after disclosing his disability yet offers no evidence as to how that same action was connected to his disability. Instead, the only intervening events were Plaintiff's reprimands for his uncivil actions, including one that pre-dated Dr. Eikermann's hiring.

Montefiore wants to emphasize this important factual background, Plaintiff was denied the same promotion in 2020, which was prior to the disclosure of his alleged disability and prior to Dr. Eikermann becoming Chair or even being employed by Montefiore. (56.1 ¶¶ 23, 27-30). Furthermore, after Plaintiff's initial meeting with Dr. Eikermann he emailed Dr. Penny Grossman to advise her that Dr. Eikermann plans to discuss his promotion with the current vice chair, not that Dr. Eikermann made any decisions. Plaintiff further stated "[t]he Vice chair and others in the dept. routinely insist on very strict criteria for people who are not in the club." When asked during his deposition, what he meant by "in the club", Plaintiff responded people who were from Columbia got preferences. People who were from Cornell got preferences" and "some preference was given to minorities and to women." Plaintiff never indicated the "club" was based on anyone's disability. (56.1 ¶¶ 79-80). In other words, Plaintiff connected the reasons for not being promoted to his being a white male who lacked an Ivy league education. While Montefiore finds that testimony untrue, offensive and petty, it does nothing to advance his claim of disability discrimination.

Moreover, there is no evidence, including Plaintiff's secretly tape-recorded conversations with Dr. Eikermann on October 3, 2021[4] and November 30, 2021, that Dr. Eikermann or anyone at Montefiore made any comments or even referred to Plaintiff about his disability.  (56.1 ¶¶ 103, 112 and Ex. MM and RR). Absent allegations of "any animus, any derogatory comments, or anything else" that would raise an inference of discrimination, Plaintiff cannot premise a discrimination claim on Defendants failure to promote him. *See Gupta v. N.Y.C. Sch. Const. Auth.*, No. 04 CV 2896 (NGG) (LB), 2007 WL 1827418, at *4 (E.D.N.Y. June 25, 2007), *aff'd*, 305 F. App'x 687 (2d Cir. 2008) (summary order); *see also Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015) (plaintiff asserting a discrimination claim must allege facts demonstrating "at least minimal support for the proposition that the employer was motivated by discriminatory intent"); *Thomson v. Odyssey House*, No. 14-cv-3857, 2015 WL 5561209, at *16 (E.D.N.Y. Sept. 21, 2015) (dismissing disability discrimination claims where the plaintiff "failed to present any allegations that would give rise to the inference that her alleged disability or perceived disability played a motivating role").

Finally, Plaintiff's remaining acts of alleged instances of disability discrimination do not constitute adverse actions, or that he was "treated less well" because of his disability as per the NYSHRL and NYCHRL.  *See, e.g., Weeks v. N.Y. State Div. of Parole*, 273 F.3d 76, 86 (2d Cir. 2001) (criticism of an employee in the course of evaluating and correcting her work is not an adverse employment action); *Rivera v. Greater Hudson Valley Health Sys.*, No. 21-cv-01324 (NSR), 2023 WL 2588308, at *12 (S.D.N.Y. Mar. 21, 2023) ("It is well established that being placed on a performance improvement plan does not constitute an adverse employment action."); *Lucenti v. Potter,* 432 F. Supp. 2d 347, 364 (S.D.N.Y. 2006) (excessive scrutiny not connected to

---

[4] Plaintiff produced this audio transcription with an October 3, 2021, date, however, October 3, 2021 was a Sunday. The meeting actually took place on Monday, October 4, 2021.

a particular change in the terms and conditions of employment is not an adverse action); *Tepperwien v. Entergy Nuclear Operations, Inc*., 663 F.3d 556, 570 (2d Cir. 2011) (constructive criticism and evaluation plans are generally not adverse actions for purposes of a discrimination claim); *Royall v. City of Beacon*, No. 24-cv-3 (KMK), 2024 WL 4266546 at *14 (S.D.N.Y. Sept. 23, 2024) (citations omitted) ("inappropriate or negative comments" 'are not, standing alone, adverse employment actions, because mere comments do not materially affect employment.'").

Even if, however, any of the remaining alleged acts constituted adverse actions, or demonstrate that Plaintiff was treated less well because of his disability, which Defendants deny, there is no factual basis that Dr. Eikermann (1) "boasted" about excluding him from promotion; (2) regularly advised Plaintiff he was searching for a basis to terminate him; (3) excluded Plaintiff from speaking at grand rounds; (4) insisted that Plaintiff work overnight calls; and (5) told Plaintiff he was not permitted to make complaints to Montefiore's Human Resources Department.

First, there is no evidence that Dr. Eikermann "boasted" about excluding him from promotion and regularly advised Plaintiff he was searching for a basis to terminate him. In fact, the secretly recorded conversations of October 3, 2021, and November 30, 2021 between Plaintiff and Dr. Eikermann clearly show the opposite. In this regard, Dr. Eikermann was not aggressive, but rather supportive of Plaintiff by him guidance on how to succeed. Plaintiff was "pleased" that Dr. Eikermann gave him some ideas about how to ensure he would get promoted next year and Dr. Eikermann specifically told Plaintiff "we don't want to lose you." (56.1 ¶¶ 100-101). Again, these recordings were secretly recorded so only Plaintiff knew he planned to use this at a later date while Dr. Eikermann had no idea he was being recorded.

Second, Plaintiff's allegation that he was excluded from speaking at grand rounds is contradicted by the record evidence. In this regard, Plaintiff emailed his supervisor on May 16, 2021 that his "grand rounds were a big hit", and thereafter acknowledged at his deposition that on

January 19, 2022, he received positive feedback from Dr. Eikermann on his Grand Rounds.  (56.1 ¶¶ 81, 128).

Third, it is undisputed, and Plaintiff conceded as much at his deposition, that Glenn Mann, not Dr. Eikermann was responsible for making the schedules for the Anesthesiology Department in 2021 and 2022.  (56.1 ¶54).  Moreover, Montefiore granted Plaintiff's reasonable accommodation request not to work overnight calls in April of 2021, and Plaintiff was only scheduled to work the overnight calls that he had previously committed to, and/or which he agreed to do.  (56.1 ¶¶ 61, 62, 66, 68, 71).

Lastly, the November 30, 2021 secretly taped conversation makes clear that Dr. Eikermann never prohibited Plaintiff from making complaints to Montefiore's Human Resources Department, but rather clarified that there were different avenues available for reporting of issues.  (56.1 ¶¶ 96, 119, 132).

Thus, Plaintiff's disability discrimination claim should be dismissed.

## B.    PLAINTIFF CANNOT ESTABLISH A FAILURE TO ACCOMMODATE CLAM

To establish a claim for disability discrimination for failure-to-accommodate under the ADA, NYSHRL and NYCHRL, Plaintiff must show that (1) he is a person with a disability under the meaning of the ADA, NYSHRL and NYCHRL; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, he could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations. *Wright v. City of N.Y.,* No. 23 Civ. 3149 (KPF), 2024 WL 3952722, at *8 (S.D.N.Y. Aug. 27, 2024); *Shankar v. Accenture LLP*, No. 21-cv-3045 (PAE) (OTW), 2023 WL 2908660 at *5 (S.D.N.Y. Feb. 14, 2023); *McMillian v. City of N.Y.,* 711 F.3d 120, 125-26 (2d Cir. 2013).  Here, Plaintiff cannot satisfy the fourth element.

It is undisputed that on April 19, 2021, Plaintiff submitted a medical note seeking an accommodation to not take overnight call because of his sleep apnea and Montefiore granted Plaintiff's reasonable accommodation. (56.1 ¶¶ 58, 61). Plaintiff testified that he was not required to take overnight calls from May through December of 2021. (56.1 ¶ 62). In December of 2021, Plaintiff learned he was scheduled to work two overnight calls in January, and, agreed via email to cover the two days. (56.1 ¶ ¶66, 68). Thereafter, Plaintiff's doctor submitted another note stating that Plaintiff should not be taking overnight call. (56.1 ¶67). On December 29, 2021, Dr. Straker emailed Plaintiff about the President's Day weekend coverage for which he was assigned M2 coverage for the Saturday through Monday (2/19-2/21) via the Lottery (which was assigned a year prior), and asked Plaintiff whether he was able to keep this commitment. (56.1 ¶ ¶ 57, 69). Plaintiff responded stating "I understand the situation. I appreciate this was assigned by the lottery in the past, so rest assured I will cover the M2 for the holiday weekend." (56.1 ¶ 71).

Thus, the undisputed record evidence establishes that Montefiore granted Plaintiff's reasonable accommodation request starting in April 2021, and only placed Plaintiff on the overnight calls that he had previously committed to, and/or which he agreed to do. Plaintiff's testimony that he was placed on overnight calls that he committed to a year prior, and/or which he agreed to do, does not mean Montefiore did not accommodate him. *See Wells v. Achievement Network*, 18 Civ. 6588 (KPF), 2021 WL 810220, at *16 (S.D.N.Y. Mar. 2, 2021) (accommodations provided during plaintiff's leave, even if they varied to some extent from the written plan, were reasonable); *Yennard v. Boces*, 353 F. Supp. 3d 194, 209 (N.D.N.Y. 2019) (finding that Defendant's alleged failure to provide the granted accommodation did not prevent Plaintiff from committing the critical safety violations that led to Plaintiff's termination).

Therefore, he has no claim of failure to accommodate during this period. *Brown v. The Pension Bds.*, 488 F. Supp. 2d 395, 407 (S.D.N.Y. 2007) (There is no ADA claim if the employer

granted the employee's accommodation request). Even if he did, he quit his job rendering any accommodation moot.

Accordingly, Plaintiff's claim that Defendants refused to reasonably accommodate him should not survive summary judgment.

### C.    PLAINTIFF CANNOT ESTABLISH A HOSTILE WORK ENVIRONMENT CLAIM BASED ON HIS DISABIITY UNDER THE ADA, NYSHRL AND NYCHRL

To prevail on a hostile work environment claim under the ADA, the plaintiff must show "(1) that the harassment was 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment,' and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002); *Hawkins-El v. N.Y.C. Transit Auth.*, No. 18-CV-7167, 2021 WL 4222400, at *7 (E.D.N.Y. Sept. 16, 2021).

Under the NYCHRL and NYSHRL, a plaintiff must demonstrate that he was "treated less well than other employees" because of his membership in one or more protected categories. *Espinoza v CGJC Holdings LLC*, No. 23-cv-9133, 2024 WL 3520662, at *5 (S.D.N.Y. July 23, 2024); *Jadallah v N.Y.C. Dep't of Educ.*, No. 21-cv-6390, 2024 U.S. Dist. LEXIS 58410, at *29-30 (E.D.N.Y. Mar. 28, 2024).  "Whether brought under the NYSHRL or NYCHRL, "the claim will not succeed if the offending actions are no more than petty slights or trivial inconveniences" *Black v ESPN, Inc.*, 70 Misc. 3d 1217, 2021 NY Slip Op 50118(U) at *16 (Sup. Ct., N.Y. Cnty. Feb. 19, 2021).

In support of his claim that he was subjected to a hostile work environment, Plaintiff alleges that Dr. Eikermann (a) excluded Plaintiff from consideration for a promotion from Associate Professor to Professor on the Clinician Educator Track at Einstein;  (b) issued him an FPPE with a performance improvement plan; (c) was aggressive during the October 3, 2021 meeting; (d)

"boasted" to Plaintiff that he excluded him from consideration from promotion; (e) insisted that Plaintiff work overnight call; (f) refused to give him non-clinical time; and (g) prevented Plaintiff from speaking during rounds. *See* Plaintiff's Counter-Statement 56.1 ¶¶ 35, 68, 69, 71, 82, 87, 88, 89, 92, 96, 97, 99, 103, 112, 114, 119, 128.

Plaintiff's hostile work environment claim fails for a number of reasons. Initially, Plaintiff alleges no evidence tying allegedly harassing incidents or treatment of him to his disability, which is fatal to his claim.

Second, even if all of Plaintiff's allegations regarding his treatment are true, which they are not and are , they are not sufficiently severe or individually or collectively to establish a hostile work environment under Title VII, nor are they more than petty slights and trivial inconveniences under the NYSHRL and the NYCHRL.

### 1.     *The Conduct Alleged Did Not Occur "Because of" Plaintiff's Disability*

Although the ADA and the NYSHRL/NYCHRL require different levels of severity in order to establish a hostile work environment claim, all of the laws require that the conduct complained of be related to membership in a protected category. Plaintiff alleges no evidence tying allegedly harassing incidents or treatment of him to his disability which is fatal to his claim. *Brennan v. Metro. Opera Ass'n, Inc*., 192 F.3d 310, 318 (2d Cir. 1999) ("A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class.") *Young v. Limited Brands*, No. 11-CV-2927, 2013 WL 5434149 at *10 (S.D.N.Y. Sept. 25, 2013) ("Plaintiff raises a slew of other harassment-related assertions, but none raises a triable issue of material fact as to whether any alleged harassment occurred *because of* her 'disability.'"); *Owens v. Napolitano*, No. 05-CV-5987, 2011 WL 1327118, at *7 (E.D.N.Y. Mar. 31, 2011) (disrespectful race-neutral and age-neutral actions, while inappropriate for the workplace, "do not raise a cognizable claim of hostile work environment.").

19

Here, Plaintiff is unable to come up with a single comment that was directed at his sleep apnea. In fact, it is undisputed that Dr. Eikermann never yelled, screamed or made any discriminatory comments on the basis of Plaintiff's disability or any other protected characteristic. (56.1 ¶¶ 103, 112). Plaintiff must do more than simply allege he has a disability and separately that his supervisor was harsh and unjust to him; he must connect the two. *See Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2002) ("Everyone can be characterized by sex, race, ethnicity or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decision that lack a linkage or correlation to the claimed ground of discrimination").

2. ***The Conduct Alleged Does Not Rise to the Level of "Severe or Persuasive" or Even the Lesser Standard of "Petty Slights or Trivial Inconvenience"***

Plaintiff's hostile work environment claims do not meet the standard of "severe and pervasive", or even the lesser standard of what a reasonable person would consider "a petty slight or trivial inconvenience". In fact, Plaintiff has failed to substantiate how he was harassed or that any alleged harassment rose to the level necessary to establish a hostile work environment. For example, when asked if he believed Dr. Eikermann was aggressive during the October 3, 2021 meeting, Plaintiff first stated yes, and then changed his response to "I don't know that I would use the word aggressive, I would use the word unpleasant to the point of nasty, or just incorrect. (56.1 ¶¶ 92). Plaintiff's response, however, to why he believed Dr. Eikermann was being aggressive, was "he said things were contrary to fact, clearly indicating that he was targeting me and trying to manufacture claims to exit me from the department." (56.1 ¶93).

Yet, not once did Plaintiff testify that Dr. Eikermann was aggressive towards him because of disability. In fact, he admitted that Dr. Eikermann never referred to his disability. (56.1 ¶¶ 103, 112). Plaintiff's allegations are impermissibly vague and do not establish harassment. *See e.g.*

*Wilson v. Consolidated Edison Co. of N.Y.*, No. 96-CV-7546 (RCC), 2000 WL 335733, at *6 (S.D.N.Y. Mar. 30, 2000) (dismissing hostile work environment claim because "plaintiff's allegations of isolated encounters that were not definitely discriminatory do not amount to severe and pervasive conduct").

Additionally, while Dr. Eikermann participated in issuing Plaintiff the FPPE, the record evidence establishes that Dr. Eikermann initially held off issuing the FPEE, until he was able to personally evaluate Plaintiff's work performance, attitude and interactions over an extended period of time, despite earlier discussions with Human Resources, Legal and others on the Executive Committee, and that he issued it in November after receipt of another employee complaint-and not because of Plaintiff's disability. (56.1 ¶¶ 87-88, 104-105. 113-114).

Plaintiff's harassment allegations seem to be based on Dr. Eikermann's management style. It is undisputed that Dr. Eikermann became Chair on April 15, 2021, just a few days before Plaintiff requested a reasonable accommodation. (56.1 ¶¶ 58, 72). It is also undisputed that Dr. Eikermann was part of the decision not to submit Plaintiff's application for promotion from Associate Professor to Professor on the Clinician Educator Track as a result of Plaintiff's personnel issues, and issued him an FPPE. (56.1 ¶¶ 89, 114).

While Plaintiff may have perceived Dr. Eikermann's new leadership style and decisions toward him as rude or unfair, it is not enough to establish a hostile work environment. The record evidence establishes that Dr. Eikermann never yelled, screamed, acted in a rude manner or made any discriminatory comments on the basis of his disability or any other protected characteristic. Indeed, Plaintiff testified at his deposition that Dr. Eikermann did not raise his voice, become aggressive, call him names or refer to his disability. (56.1 ¶¶103, 112). (*See Alshami v. City Univ. of N.Y.*, No. 160183/2019, 2021 N.Y. Misc. LEXIS 3108, at *15 (Sup. Ct., N.Y. Cnty. June 2, 2021) (one instance of being yelled at and treated rudely by supervisor not sufficient to bring a

hostile work environment claim) (*citing Forrest v. Jewish Guild for the Blind,* 3 N.Y.3d 295, 312 (2004) (rude behavior by supervisor insufficient to create a hostile work environment)); *Demoret v. Zegarelli*, 451 F.3d 140, 150 (2d Cir. 2006) (supervisor's alleged close monitoring of plaintiff's work, rudeness, failure to take advantage of her abilities, and reassignment of responsibilities was not so severe as to be abusive); *Lucenti v. Potter*, 432 F. Supp. 2d 347, 362 (S.D.N.Y. 2006) ("Allegations of even constant reprimands and work criticism by themselves are not sufficient to establish a hostile environment claim.").

In sum, Plaintiff's allegations that he was treated less well because of his disability are belied by his testimony and the record evidence, and are nothing more than speculation and conjecture insufficient to establish a hostile work environment. *See Campbell v. N.Y.C. Transit Auth.*, 93 F. Supp. 3d 148, 173 (E.D.N.Y.  2015) ("[p]laintiff has done no more than point to various ways in which she feels she was mistreated and argue that it must have been because of her sex, age, or disability.  This is not sufficient to sustain a claim of discrimination.") *aff'd*, 662 F. App'x 57 (2d Cir. 2016).

Accordingly, Plaintiff's hostile work environment claims should be dismissed.

### 3.    *Even If Plaintiff Can Establish A Hostile Work Environment, Defendants Are Still Entitled to Summary Judgment Based on the Faragher/Ellerth Defense.*

Montefiore is entitled to summary judgment because it exercised reasonable care to prevent and correct discriminatory harassing behavior and Plaintiff unreasonably failed to take advantage of Montefiore's procedures.

"The [*Faragher/Ellerth*] defense comprises two elements: that (1) the employer exercised reasonable care to prevent and correct promptly any discriminatory harassing behavior, and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ferrara v. Sterling, Inc.*, No.

23-0454-cv, 2024 WL 485742, at *1 (2d Cir. Feb. 8, 2024) (citations omitted). The defense is available for claims under both Title VII and the NYSHRL. *Id.; Green v N.Y.C. Transit Auth*. No. 15-CV-8204, 2020 WL 5632743, at *10 (S.D.N.Y. Sept. 21, 2020).

As an initial matter, Montefiore is an equal opportunity employer with long-standing policies expressly prohibiting any form of harassment in the workplace, and Montefiore's policies set forth specific steps an employee may take to report harassment or discrimination. ( 56.1 ¶2).  During his deposition, Plaintiff admitted that Montefiore had an anti-discrimination and harassment policy with complaint procedures during his employment.  (56.1 ¶2) Plaintiff also testified that Montefiore's Non-Discrimination and Anti-Harassment Policy was accessible via Montefiore's intranet and that he was required to attend harassment training during his employment with Montefiore. *See* Anthony Decl. Ex. A at pp. 64: 17-24; and 66:12-15. Thus, Plaintiff satisfies the first element of the defense as he cannot credibly argue there was "no reasonable avenue" for his complaint. *See Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d Cir. 2001) ("Although not necessarily dispositive, the existence of an anti-harassment policy with complaint procedures is an important consideration in determining whether the employer has satisfied the first prong of this defense.").

As for the second element, Plaintiff testified that he never filed any type of formal complaint to anyone at Montefiore about Dr. Eikermann's alleged harassment/discrimination.  *See* Anthony Decl. Ex. A at pp 139:10-16.  However, Plaintiff did file a complaint with Montefiore's Human Resources Department via email on November 29, 2021 concerning Dr. Nevandusky, demonstrating that Plaintiff  was well aware that these avenues existed.  When asked during the deposition about this email complaint, Dr. Goldstein admitted that he did not reference Dr. Eikermann, harassment or discrimination, and specifically testified "I wasn't considering discrimination from anyone at this point".  *See*  Anthony Decl. A  at pp. 161:8-162:23 and

Anthony Decl. Ex. CCC. Accordingly, the evidence is undisputed that Plaintiff, despite knowing how to, failed to take advantage of Montefiore's policies to report Dr. Eikermann's alleged harassing conduct. Therefore, Defendants satisfied both elements of the Faragher/Ellerth affirmative defense. *See Ferrara*, 2024 WL 485742 at *2 (finding that even if Plaintiff had established the existence of a hostile work environment, the defendant was entitled to summary judgment based on the "Faragher/Ellerth" affirmative defense).

Accordingly, Defendants should be entitled to summary judgment on Plaintiff's hostile work environment claim.

### D.    PLAINTIFF CANNOT ESTABLISH A CONSTRUCTIVE DISCHARGE CLAIM

There is no evidence that Defendants made Plaintiff's working conditions so intolerable that he was forced to resign.

A "'[c]onstructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily.'" *Felty v. Regeneron Pharms., Inc.*, No. 18 CIV. 5667 (NSR), 2021 WL 860379, at *20 (S.D.N.Y. Mar. 8, 2021) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000)). The burden for establishing a constructive discharge is quite high, requiring a plaintiff to show "that [his] employer deliberately and discriminatorily created work conditions so intolerable that a reasonable person in [the plaintiff's] position would have felt compelled to resign." *Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 608 n.9 (2d Cir. 2006). The challenged conduct must be deliberate and purposely calculated to encourage the employee's resignation. *Petrosino v. Bell Atl.*, 385 F.3d 210, 230 (2d Cir. 2004); *Flaherty v. Metromail Corp.*, 235 F.3d 133, 138 (2d Cir. 2000). Thus, "[t]his standard cannot be met if an employee's working conditions are merely difficult or unpleasant." *Eichler v. Am. Int'l Grp., Inc.,* No. 05-CIV-5167

(FM), 2007 WL 963279, at *18 (S.D.N.Y. Mar. 30, 2007); *see Stetson v. NYNEX Serv. Co.,* 995 F.2d 355, 360 (2d Cir. 1993) (citations omitted) (finding that evidence of hypercritical supervision fell well short of permitting an inference of constructive discharge, noting that even unfair and unwarranted treatment is by no means the same as constructive discharge); *Ramirez v. Temin & Co.,* No. 20 Civ. 6258, 2021 WL 4392303, at *9 (S.D.N.Y. Sept. 24, 2021) (citations omitted) (finding the "hypercritical supervision, and excessive monitoring and criticism are insufficient to support a claim for constructive discharge").

Here, there are no facts that even arguably support a constructive discharge claim. Indeed, Plaintiff does not identify a single change in his working conditions or any reduction in his benefits or pay. In fact, Plaintiff was denied clinical time and did not attain a promotion before Montefiore became aware of his disability and Dr. Eikermann became Chair. (56.1 ¶¶ 9, 39, 40). Further, the requested accommodation, removing Plaintiff from overnight calls, to enable him to perform his work functions, was in effect at the time he voluntarily resigned. (56.1 ¶¶ 58, 61, 62, 65, 67).

As set forth in Section III above, Plaintiff's allegations, even when taken as true, do not describe a hostile work environment, let alone that Plaintiff was subject to constructive discharge. *See Kelly v. N.Y. State Office of Mental Health*, 200 F. Supp. 3d 378, 402 (E.D.N.Y. 2016) ("Without an actionable hostile environment claim, a plaintiff's constructive discharge claim must also fail.") (citing *O'Neal v. State Univ. of New York*, No. 01-CV-7802 (DGT), 2006 WL 3246935, at *12 (E.D.N.Y. Nov. 8, 2006)).

While it is undisputed that Dr. Eikermann presented Plaintiff with the FPPE, which included a Performance Improvement Plan that stated "if your performance does not meet expectations and/or there are additional performance issues identified, you will be subject to disciplinary action, including potential loss of employment, (56.1 ¶114 and Ex. TT), this would

not amount to constructive discharge.[5] *See, e.g. Pasquarello v Crothall Healthcare, Inc.*, No. 21-cv-08732, 2023 WL 5714165, at *8 (S.D.N.Y., Sept. 5, 2023) (finding no constructive discharge despite Plaintiff's allegations that his supervisor made statements including that he did not see Plaintiff in the department long-term and suggested Plaintiff transfer, and put him on a PIP and counseling); *Jackson v Sleepy's, LLC*, No. 13-CV-2086, 2016 WL 1223452, *6 (E.D.N.Y., Mar. 29, 2016) (finding that "[a]lthough the PIP stated that Plaintiff would face termination if he did not show improvement" does not, as a matter of law, amount to a constructive discharge); *Miller v. Batesville Casket Co., Inc.,* 312 Fed. App'x 404, 406-07 (2d Cir. 2009) (placement on "performance improvement plan" was not tantamount to a constructive discharge where there was no evidence that it was "impossible to meet"") *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 525 (S.D.N.Y. 2015) (no constructive discharge where performance improvement plan provided "a roadmap for [plaintiff] to succeed in his position").

Additionally, the fact that Plaintiff felt Dr. Eikermann implemented rules that allegedly only applied to him, repeatedly requested special assessment of Plaintiff's cases, commented negatively about Plaintiff in the presence of others and prevented him from speaking during grand rounds – none of which Plaintiff has substantiated or has connected to his disability cannot form the basis of a constructive discharge claim. *See Guglietta v. Meredith Corp.*, 301 F. Supp. 2d 209 (D. Conn. 2004) ("disagreements over unpleasant working conditions that are part and parcel of a job do not form the basis of a constructive discharge claim" (*citing O'Neil-Marino v. Omni Hotels Mat. Corp.*, 2001 U.S. Dist. LEXIS 2138, at *20 (S.D.N.Y. Mar. 2, 2001))); *Stetson v NYNEX Serv. Co.*, 995 F2d 355, 360 (2d Cir. 1993) (employee dissatisfied with assignments, criticisms of

---

[5] While there might be a dispute as to whether Plaintiff received the FPPE dated September 10, 2021, or October 3, 2021, the sum and substance of both are materially the same. The fact that the date from which Plaintiff 's performance would be evaluated differed between the documents does not create an issue of fact, as Plaintiff was still given at least 6 months from the date of the FPPE to improve his performance, which is a generous amount of time and does not indicate termination was imminent.

his work, and his compensation did not experience constructive discharge, especially where supervisor had never reduced plaintiff's salary, nor suggested plaintiff should retire).

Finally, any claim of constructive discharge is undermined by Dr. Eikermann's continued investment and support of Plaintiff throughout Dr. Eikermann's limited tenure with Montefiore, which is evidenced by the secretly tape-recorded meetings produced by Plaintiff that were held on October 4, 2021 and November 30, 2021.

Specifically, during the October 4, 2021 tape recorded meeting, Dr. Eikermann told Plaintiff "we support you and whatever you feel that we really deeply care about you because we think you are good and you're—you're a resource." "We don't want to lose you. We want to help you." (56.1 ¶¶ 94, 101)  Thereafter, during the November 30, 2021 tape recorded meeting, Dr. Eikermann once again told Plaintiff he would support him and that Plaintiff can go to him with issues.  (56.1 ¶¶ 94, 101).

Even after placing Plaintiff on the FPPE, Dr. Eikermann continued to provide Plaintiff with support via telephone and email stating "we are committed to helping you develop your full professional potential in our Department". (56.1 ¶ 123).  As late as February 1, 2022, Plaintiff recognized the "good conversation" had had with Dr. Eikermann on January 19, 2022 and the positive feedback he received from the Grand Rounds which he delivered after receipt of the FPPE. (56.1 ¶ 128).  *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir. 2000) (finding no constructive discharge in part because evidence showed that defendant wanted employee to remain in its employ) (citing *Pena v. Brattleboro Retreat*, 702 F.3d 322, 325 (2d Cir. 1983)).

 In sum, Plaintiff cannot demonstrate that Defendants deliberately and intentionally made his employment so intolerable because of his disability that a reasonable person would have resigned.   The end of Plaintiff's employment was entirely his own choice and not that of

Montefiore.

Thus, Plaintiff's constructive discharge claim should be dismissed.

### E.    THE CLAIMS AGAINST INDIVIDUAL DEFENDANT DR. EIKERMANN SHOULD BE DISMISSED

Individual defendants cannot be held personally liable for discrimination claims under the ADA. *See, e.g., Burgess v. The New Sch. Univ.*, No. 23-cv-4944, 2024 WL 4149240, at *21 (S.D.N.Y., Sep. 11, 2024); *DiNome v. Cordis U.S. Corp.*, No. 23-CV-11173, 2024 WL 3888799, at *8 (SDNY, Aug. 21, 2024). Thus, Plaintiff cannot assert ADA claims against Dr. Eikermann.

Under the NYSHRL and the NYCHRL, liability is potentially available against individual defendants under an aiding and abetting theory. The NYSHRL and NYCHRL "provide for individual liability for persons who aid, abet, incite, compel, or coerce the doing of any of the acts forbidden thereunder, or attempt to do so." *Molina v John Jay Inst. for Justice*, No. 23 Civ. 1493, 2024 WL 4276913, at *14 (S.D.N.Y. Sept. 24, 2024). "The aider and abettor need not have had an employer-employee or supervisory relationship with the plaintiff." Rather, she need only have (1) "actually participate[d] in the conduct giving rise to the discrimination," and (2) "share[d] the intent or purpose of the principal actor." *Id.*

Therefore, should this Court grant summary judgment on all Plaintiff's discrimination claims brought under the NYSHRL and NYCHRL against Defendant Montefiore, the question of Defendant Dr. Eikermann's individual liability need not be reached. *See Stinnett v. Delta Air Lines, Inc.*, No. 18 Civ. 2704 (DLI), 2019 WL 1493224, at *9 (E.D.N.Y. Mar. 31, 2019) (dismissing aiding and abetting claims under the NYSHRL and the NYCHRL because the court dismissed the plaintiff's "primary discrimination claims" under those statutes), *aff'd*, 803 F. App'x 505 (2d Cir. 2020); *Jackson-Lipscomb v. City of N.Y.,* No. 17-CV-10093, 2022 WL 953048, at *108 (S.D.N.Y. Mar. 30, 2022) (dismissing aiding and abetting claims under the NYSHRL and

the NYCHRL because the Court dismissed plaintiff's discrimination claims).

## IV.    CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court grant summary judgment in their favor, dismiss the Complaint, and grant such other and further relief as the Court deems just and proper.

**LITTLER MENDELSON, P.C.**

Dated: December 18, 2024
     New York, New York

*/s/ William J. Anthony*
William J. Anthony
Melissa Friedland
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022.3298
212.583.9600

*Attorneys for Defendants*

29