UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHELDON GOLDSTEIN,

        Plaintiff,

    -against-

MONTEFIORE MEDICAL CENTER and
MATTHIAS EIKERMANN,

        Defendants.

Case No. 22-cv-06723

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Alexander Granovsky
Denise Rubin Glatter
David Byrnes
GRANOVSKY & SUNDARESH PLLC
48 Wall Street, 11th Fl.
New York, NY 10005
ag@g-s-law.com
dglatter@g-s-law.com
(646) 524-6001

*Attorneys for Plaintiff Sheldon Goldstein*

Table of Contents

I.    PRELIMINARY STATEMENT .................................................................................. 1

II.   STATEMENT OF FACTS AND GENUINE ISSUES OF MATERIAL FACT ........ 3

   A.   Background: Plaintiff Consistently Performs Well and Is A Serious Candidate for Promotion ...................................................................................................................... 3

   B.   Dr. Goldstein Seeks Medically Necessary Reasonable Accommodation and Defendants Immediately Marshal Negative Information About Him ................................ 4

   C.   On July 1, 2021, Dr. Goldstein Has to Renew His Reasonable Accommodation Request and Is Subjected to Adverse Employment Actions ............................................. 5

   D.   Ready, Fire, Aim!  Defendants Begin Drafting the FPPE ......................................... 5

   E.   On October 3, 2021, Defendants Subject Dr. Goldstein to Baseless Criticisms ......... 6

   F.   November 30, 2021 Meeting and Issuance of FPPE to Dr. Goldstein ....................... 7

   G.   Dr. Goldstein is Subject to A Hostile Work Environment and Constructive Discharge ........................................................................................................................ 9

III.  LEGAL ARGUMENT ........................................................................................... 9

   A.   Dr. Goldstein was Subjected to Discrimination Due to Disability ........................... 10

      1.   Dr. Goldstein Meets the *Prima Facie* Case of Discrimination Under the ADA, NYSHRL, and NYCHRL ............................................................................................ 10

      2.   Defendants' Employment Decision Was Based In Whole Or In Part On Discrimination ............................................................................................................. 13

      3.   Defendants Discriminated Against Dr. Goldstein Under the NYSHRL and NYCHRL .................................................................................................................... 17

   B.   Defendants Stopped Accommodating Dr. Goldstein Which is a  Refusal to Accommodate Him ........................................................................................................ 18

   C.   Defendants Effected Both a Hostile Work Environment and Constructive Discharge 20

      1.   Hostile Work Environment ..................................................................................... 20

      2.   Defendants Subjected Dr. Goldstein to a Hostile Work Environment Under the NYSHRL and NYCHRL ............................................................................................ 24

      3.   Constructive Discharge ......................................................................................... 26

      4.   The Faragher/Ellerth Defense Does Not Apply Because Dr. Goldstein Was Denied a Reasonable Avenue for Complaint .......................................................................... 28

   D.Defendant Dr. Eikermann's Liability................................................................29
CONCLUSION ....................................................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*Alfano v. Costello,* 294 F.3d 365 (2d Cir. 2002)........................................................................ 20

*Alvarado v. United Hospice, Inc.,* 631 F. Supp. 3d 89 (S.D.N.Y. 2022)..................................... 25

*Bacchus v. N.Y.C. Dep't of Educ.,* 137 F. Supp. 3d 214 (E.D.N.Y. 2015) ................................. 18

*Berger v. N.Y.C. Police Dep't,* 304 F. Supp. 3d 360  (S.D.N.Y. 2018) ....................................... 18

*Brooklyn Ctr. for Indep. Of the Disabled v. Metro. Transp. Auth.,* 11 F.4th 55 (2d Cir. 2021)... 17

*Campbell v. Cellco P'ship,* 860 F. Supp. 2d 284 (S.D.N.Y. 2012)............................................... 18

*Campo v. City of New York,* 19-CV-04364 (NGG)(SJB), 2022 U.S. Dist. LEXIS 60288
    (E.D.N.Y. Mar. 31, 2022) ...................................................................................................... 30

*Chertkova v. Connecticut Gen. Life Ins. Co.,* 92 F.3d 81 (2d Cir. 1996) ............................. 26, 27

*Danzer v. Norden Systems, Inc.,* 151 F.3d 50 (2d Cir. 1998) ............................................... 16, 17

*Dougherty v. Ferrari Express, Inc.,* 19-CV-3961 (JMA)(ARL), 2024 U.S. Dist. LEXIS 146038
    (E.D.N.Y. Aug. 15, 2024)...................................................................................................... 30

*Felix v. N.Y.C. Dep't. of Educ.,* 21 Civ. 6109 (LGS) 2023 U.S. Dist. LEXIS 127610 (S.D.N.Y.
    Jul. 24, 2023)......................................................................................... 18, 19, 20, 21, 22, 24

*Fox v. Costco Wholesale Corp.,* 918 F.3d 65 (2d Cir. 2019)....................................................... 20

*Fulton v. City of New York,* 20-CV-144 (WFK)(PK), 2021 U.S. Dist. LEXIS 268140 (E.D.N.Y.
    Mar. 15. 2021)................................................................................................................... 2, 11

*Garcia v. Dept. of Corr. Servs.,* No. 05 Civ. 5138 (SAS), 2006 WL 3549764 (S.D.N.Y. Dec. 5,
    2006) ..................................................................................................................................... 11

*Gulitz v. Dibartolo,* 08-CV-2388, 2010 U.S. Dist. LEXIS 164586 (S.D.N.Y. Jul. 13, 2010)...... 29

*Haynes v. City of New York,* 19-cv-11007 (PGG)(JW), 2024 U.S. Dist. LEXIS 56471 (S.D.N.Y.
    Mar. 26, 2024)................................................................................................. 11, 14, 16, 24

*Heiden v. New York City Health & Hosps. Corp.,* 20-cv-10288, 2023 U.S. Dist. LEXIS 5583 .. 26

*Holcomb v. Iona Coll.,* 521 F.3d 130 (2d Cir. 2008)................................................................... 13

*Holtz v. Rockefeller & Co.,* 258 F.3d 62 (2d Cir. 2001) ............................................................. 21

*James v. N.Y. Racing Ass'n,* 233 F.3d 149 (2d Cir. 2000) .......................................................... 13

*Kaytor v. Elec. Boat Corp.,* 609 F.3d 537 (2d Cir. 2010) ........................................................... 21

*Kirsch v. Fleet St., Ltd.,* 148 F.3d 149 (2d Cir. 1998) ................................................................ 26

*Lee v. Riverbay Corp.,* 22-CV-7504-LTS, 2024 U.S. Dist. LEXIS 175514 (S.D.N.Y. Sep. 27,
    2024) ..................................................................................................................................... 30

*Leopold v. Baccarat, Inc.,* 239 F.3d 243 (2d Cir. 2001) ........................................................ 28, 29

*Loeffler v. Staten Island Univ. Hosp.,* 582 F.3d 268 (2d Cir. 2009)............................................ 12

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) .......................................................... 10

*McMillan v. City of New York,* 711 F.3d 120 (2d Cir. 2013)....................................................... 10

*McNamara v. Metro. Trans. Auth.,* 13 Civ. 2411, 2015 U.S. Dist. LEXIS, 148933 (S.D.N.Y.
    Nov. 3, 2015) ........................................................................................................................ 13

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102 (2d Cir. 2013)...................... 18

*Miller v. E. Midwood Hebrew Day Sch.,* 19 CV 5580, 2021 U.S. Dist. LEXIS 28898 (E.D.N.Y.
    Feb 15. 2021) ........................................................................................................................ 12

*Molina v John Jay Inst. for Just. & Opportunity,* 2024 US Dist. LEXIS 173356 (SDNY Sep. 24,
    2024) ..................................................................................................................................... 27

*Mulligan v. Town of Hempstead,* 21-CV-964 (ARR)(ST), 2024 U.S. Dist. LEXIS 3844
    (E.D.N.Y. Jan. 8, 2024) ......................................................................................................... 28

*Nash v. Homegoods, Inc.*, 16-cv-1043 (AMD)(VMS), 2019 U.S. Dist. LEXIS 55151 (E.D.N.Y. Mar. 29, 2019)............................................................................................................................ 17

*Natofsky v. City of New York*, 921 F.3d. 337 (2d Cir. 2019) ............................................ 10

*New York State v. C&S Wholesale Grocers, Inc.*, 24 F.4th 163 (2d Cir. 2022) .......................... 10

*Owens v. City of New York Dep't of Educ.*, No. 21-2875, 2022 U.S. App. LEXIS 35393 (2d Cir. Dec. 22, 2022)) ................................................................................................................... 18

*Pena v. Brattleboro Retreat*, 702 F.2d 322 (2d Cir. 1983) ............................................... 27

*Pucino v. Verizon Communs., Inc.*, 618 F.3d 112 (2d Cir. 2010).................................... 21

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).......................... 10

*Samuels v City of NY*, 22-cv-1904, 2023 U.S. Dist. LEXIS 156539 (SDNY Sep. 5, 2023) ......... 25

*Sansone v. Brennan*, 917 F.3d 975 (7th Cir. 2019)........................................................ 20

*Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597 (2d Cir. 2006) .............................. 13

*Smith v. City of New York*, 385 F. Supp. 3d 323 (S.D.N.Y. 2019) ............................... 11

*Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303 (S.D.N.Y. 2020)................... 10

*Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003) ............................................................ 26

*Torres v. New York City Dept. of Education*, No. 18-CV-2156 (NGG) (RML), 2019 U.S. Dist. LEXIS 82897 (E.D.N.Y. May 15, 2019 ....................................................................... 20

*Tortorici v. Bus-Tev*, LLC, No. 17-cv-7507, 2021 U.S. Dist. LEXIS 174523 (S.D.N.Y. Sept. 14, 2021) ........................................................................................................................24, 25

*Tulino v. City of New York*, 813 Fed. App'x 725 (2d Cir. 2020) ................................... 27

*Ugactz v. UPS, Inc.*, No. 10-CV-1247, 2013 U.S. Dist. LEXIS 43481 (E.D.N.Y. Mar. 26, 2013) ....................................................................................................................................... 11

*Vance v. Ball State Univ.*, 570 U.S. 421 (2013)............................................................ 29

*Vig v. New York Hairspray Co., L.P.*, 885 N.Y.S.2d 74 (1st Dept. 2009)......................... 17

*Walsh v. N.Y. City Hous. Auth.*, 828 F.3d 70 (2d Cir. 2016) ......................................... 13

*Wellner v. Montefiore Med. Ctr.*, 2019 U.S. Dist. LEXIS 147844 (S.D.N.Y. 2019) .......... 12

*Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62 (2d Cir. 2000) .......................... 21

*Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55 (2d Cir. 2023).......................................... 21

*Woolf v. Strada*, 949 F.3d 89 (2d Cir. 2020).................................................................. 10

## Statutes

Administrative Code of the City of New York Section 8-107 *et seq*. ................................. *passim*

Americans with Disabilities Act of 1990, 42 U.S.C. Section 12010 *et seq*......................... *passim*

Fed. R. Civ. P. 56.......................................................................................................... 10

New York Executive Law Section 290 *et seq*. .............................................................. *passim*

## I.     PRELIMINARY STATEMENT

Plaintiff, Dr. Sheldon Goldstein, is a highly skilled and well-respected anesthesiologist.[1] Even his former employers, the Defendants, do not dispute this.  Before Dr. Goldstein requested a reasonable accommodation, Defendant Montefiore Medical Center ("Montefiore") held him in very high regard. In fact, just weeks before his request, Montefiore rated him as "excellent" in every category for the previous two-year period.

Yet, in the weeks and months following his accommodation request, Dr. Goldstein's nearly decade-long record of outstanding reviews and professional accomplishments—including coming within a few publications of promotion to full professor—was abruptly upended. Defendants suddenly dredged up long-resolved, trivial matters and labeled them as serious performance deficiencies.  They denied him consideration for a promotion he had narrowly missed the prior year, placed him on a performance improvement plan, and undermined his accommodation requests.  Despite years of exemplary service, Dr. Goldstein was facing termination for cause.

What changed between Dr. Goldstein's stellar review and his sudden professional decline? He requested an accommodation for his disability.

Dr. Goldstein's request for accommodation came on April 19, 2021, just four days after the new Chair of the Anesthesiology Department, Defendant Dr. Mathias Eikermann, assumed his role.[2]  The moment Dr. Goldstein made his request, Defendants discriminated against him because of his disability and request for accommodation.[3]  Rather than honor his need for a *medically*

---

[1] ("Plaintiff" or "Dr. Goldstein"). Dr. Goldstein is licensed to practice medicine in New York, New Jersey, and Florida and is board certified in anesthesia and internal medicine. He has over thirty years of experience as an attending anesthesiologist.
[2] Defendants' Undisputed Fact No. 72; Plaintiff's Material Fact 23.
[3] This includes under the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12010 *et seq.* ("ADA")(against Montefiore only), the New York Executive Law Section 290 *et seq.*, and the Administrative Code of the City of New York Section 8-107 *et seq.*

*necessary* accommodation for his disability[4] (no overnight call coverage),[5] Defendants immediately launched an effort to criticize every possible circumstance of his performance from prior years—yet none of which had been deemed to warrant discipline.

When Dr. Goldstein resubmitted his request for reasonable accommodation on July 1, 2021, Defendants escalated their discriminatory conduct. Within weeks, they refused to even *consider* him for a promotion (that he had just narrowly missed out on the prior year), and initiated a performance improvement plan (called a Focused Professional Practice Evaluation ("FPPE")) against him, threatening termination for cause. The pretextual nature of this effort is evident: despite citing alleged performance concerns, Defendants inexplicably sat on the FPPE for four months before presenting it to Dr. Goldstein on November 30, 2021. In the interim, they opportunistically used that time to bootstrap a host of baseless, undocumented "performance issues"—none of which were previously identified as problems in connection with his prior application for promotion nor his stellar performance review.[6]

Then, shortly after issuing the FPPE, Defendants reversed course on Dr. Goldstein's accommodation and requested that he cover overnight call during the holiday season and began assigning him new, additional, overnight call. Faced with this barrage of unfounded criticisms, the looming threat of unjust termination for cause, and the denial of his medically necessary accommodation, Dr. Goldstein was placed in an impossible position: risk his career by refusing overnight call and facing termination for cause, or risk his health by complying. Under these conditions, Defendants' actions created a hostile work environment and a constructive discharge.

---

[4] Both Severe Chronic Obstructive Sleep Apnea and long-Covid are recognized disabilities under the ADA. *Fulton,* 2021 U.S. Dist. LEXIS 268140, *21-23; https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#N
[5] This accommodation was necessary because Dr. Goldstein needed regular sleeping patterns–he could not work overnight shifts, or be available/on call at all hours of the night. His sleep had to be regular and consistent. Plaintiff's Material Facts 23, 32, 58, 59.
[6] Nor the years of consistently excellent performance reviews. *See* Declaration of Sheldon Goldstein, dated January 30, 2025 ("Goldstein Decl.") ¶ 4. Since submission to Defendants on November 1, 2024 in connection with the Court's pre-motion procedures the Goldstein Decl. has been slightly updated (with footnotes added)but the paragraph numbering remains unchanged.

For these reasons, and many more detailed within, multiple genuine issues of material fact compel denial of Defendants' motion for summary judgment.

## II.    STATEMENT OF FACTS AND GENUINE ISSUES OF MATERIAL FACT [7]

### A.    Background: Plaintiff Consistently Performs Well and Is A Serious Candidate for Promotion

Plaintiff, a board-certified anesthesiologist, maintained an impeccable record at Montefiore from the start of his employment in 2013.[8]  When Montefiore hired Dr. Goldstein, it was fully aware of—and expressly approved—his work with his company, Coagulation Sciences, LLC.[9] Throughout his tenure, all research associated with Coagulation Sciences, LLC was subject to regular oversight and review by Montefiore's Institutional Review Board ("IRB") to assess any potential conflicts of interest - none were ever found none.[10]  Moreover, the vast majority of Dr. Goldstein's professional work, presentations, and peer-reviewed publications were entirely unrelated to Coagulation Sciences, LLC.[11]

Dr. Goldstein's work involved clinical, academic, and research services plus agreed committee work, all of which he performed in an outstanding manner.  So much so that in the 2020 promotion cycle he was a serious candidate for elevation from Associate Professor to Professor. When he applied for a promotion in 2020, his application was denied, but the Committee for Academic Promotions ("CAP") deemed him sufficiently qualified for a promotion, though in need of additional peer-reviewed publications to receive the promotion.[12]  This positive trend continued

---

[7] Though detailed in the accompanying Plaintiff's Counter-Statement to Defendants' Rule 56.1 Statement of -Undisputed Material Facts, dated November 1, 2024 ("56.1 Counter-Statement," ECF No. 60-1)(which is resubmitted in opposition to Defendants' motion), consisting of Plaintiff's Responses ("Plaintiff's Response Nos. __") to Defendants' Undisputed Facts, ("Defendants' Undisputed Fact No. __") numbered 1-132 and Plaintiff's Statement of Additional Material Facts, numbered 1-62 ("Plaintiff's Material Fact __"), Plaintiff summarizes the relevant material facts—and genuine issues of material fact—with citations to relevant evidentiary support.
[8] Plaintiff's Material Fact 1; Goldstein Decl. ¶ 3.
[9] Plaintiff's Material Fact 2 *See* Declaration of Denise Rubin Glatter, dated January 31, 2025 ("Glatter Decl.") Ex. 5 (D007838-D007853 at D007841). Since submission to Defendants on November 1, 2024 in connection with the Court's pre-motion procedures the Glatter Decl. has been updated to add Exs. 17, 18, and 19, but otherwise remains unchanged.
[10] Plaintiff's Material Fact Nos. 3-5.
[11] Plaintiff's Mat8erial Fact Nos. 6-8.
[12] Plaintiff's Material Facts 11, 12, 39.

on March 9, 2021 when Dr. Goldstein received his Biennial Medical Staff Member/Provider Evaluation ("2021 Review") rating him "excellent" in all categories.[13]

One month later, when Dr. Goldstein needed a medical accommodation, his employment with Defendants began to derail.

**B.    Dr. Goldstein Seeks Medically Necessary Reasonable Accommodation and Defendants Immediately Marshal Negative Information About Him**

Dr. Goldstein's status at Montefiore changed radically on April 19, 2021, when he requested a medically necessary reasonable accommodation due to his disability that rendered him unable to cover overnight call.  Rather than addressing schedule changes, within the hours and days that followed Plaintiff's accommodation request, Defendants marshalled every conceivable issue they ever had or perceived about Dr. Goldstein:[14]

- Within *one hour* of Dr. Goldstein's request, Dr. Jonathan Leff,[15] wrote to, among others, Dr. Eikermann,[16] that Dr. Goldstein is "a challenge on multiple fronts. This situation is challenging since he was able to have an Einstein physician write a letter on his behalf…"[17] In other words, within one hour of his request, Dr. Goldstein was "a challenge."

- The next day,[18] Dr. Goldstein's Human Resources file and employment contract were subject to review[19] and Andrew Felder, Unified Administrator for the Department, emailed Microsoft Teams invites to Human Resources' Doris Poma and Dr. Goldstein with the subject, "Complaint Follow-Up – Dr. Sheldon Goldstein."[20]  So just one day after his accommodation request, Dr. Goldstein was being investigated by Human Resources.

- Two days after his request, Mr. Felder sent an email titled, "goldstein" to undisclosed recipients listing: "Pattern of comm styles, Want to help advance success, Invest in your success, Exec coaching, Communication and de-escal[a]tion, Building more cohesive team, 6 month exec coa[ch] hi[m]. 2/month Every other week 1 hours, GYN complain[t] partially

---

[13] Glatter Decl. Ex. 2 (D000071-D000075).

[14] *See generally* Plaintiff's Response No. 82 and Glatter Decl. Ex. 3 (D003912-D003934); Plaintiff's Material Facts 23-31.

[15] Dr. Leff was the Vice Chair of Professional Affairs within Dr. Goldstein's Department. Defendants' Fact No. 12.

[16] On April 15, 2021, just four (4) days before Dr. Goldstein's request for accommodation, Defendant Dr. Matthias Eikermann became chairman of Montefiore's Anesthesia Department. Defendants' Fact No. 72.

[17] Plaintiff's Material Fact 27; Glatter Decl. Ex. 3 (D003912-D003934) at D003913.

[18] Plaintiff's Material Fact 28; Glatter Decl. Ex. 3 (D003912-D003934) at D003930-D003931. Dr. Eikermann appeared to be present at this meeting.

[19] Plaintiff's Material Fact 28; Glatter Decl. Ex. 3 (D003912-D003934) at D003930-D003931.

[20] Plaintiff's Material Fact 28; Glatter Decl. Ex. 3 (D003912-D003934) at D003919-D003923.

substantiated."[21]  Meaning that, just two days after his request for accommodation, an e-mail was sent to an unknown number of recipients criticizing Dr. Goldstein's work.

- Four days following his request, Dr. Leff sent Dr. Eikermann letters from the prior promotion cycle (in which Dr. Goldstein was denied promotion).[22]

Dr. Goldstein's request triggered an immediate negative reaction.

### C.    On July 1, 2021, Dr. Goldstein Has to Renew His Reasonable Accommodation Request and Is Subjected to Adverse Employment Actions

On July 1, 2021, Dr. Goldstein had to reiterate his accommodation request that he could not cover overnight call with a new letter from his physician.[23]

Later that month, when Dr. Goldstein submitted his materials for promotion, he had exceeded the CAP's stated 2020 guidelines for promotion by accomplishing a total of sixteen publications and engaging in sustained academic productivity, including numerous external (invited) and internal (Montefiore) lectures, poster presentations, academic abstracts, and formal mentoring activities.[24]

Yet within weeks of Dr. Goldstein's second accommodation request, on July 23, 2021, about a week before the 2021 Department promotion committee meeting, Dr. Leff sent an email to Dr. Eikermann entitled, "promotions committee," and wrote, "attached is Sheldon Goldstein's CV and TP … We can discuss how to proceed (or not) whatever you want."[25] Not only did Defendants decide not to proceed, Defendants did *not even submit* Dr. Goldstein for consideration for promotion—a highly unusual step.[26]

### D.  Ready, Fire, Aim!  Defendants Begin Drafting the FPPE

---

[21] Plaintiff's Material Fact 29; Glatter Decl. Ex. 3 (D003912-D003934) at D003932. The "GYN complaint" pertains to the January 8, 2021 incident that was not sufficiently important to be referenced in his stellar March 2021 performance review. Plaintiff's Material Facts 14-22.
[22] Plaintiff's Material Fact 30; Glatter Decl. Ex. 3 (D003912-D003934) at D003943-D003944.
[23] Plaintiff's Material Fact 32, including Anthony Decl. Ex. DD (D000774-D000775).
[24] Plaintiff's Material Fact 33.
[25] Plaintiff's Response Nos. 87; Plaintiff's Material Facts 33-34.
[26] Plaintiff's Response No. 87; Plaintiff's Material Facts 33-34, 39-41.

A few days later, the Defendants began drafting the FPPE.[27]  Although the FPPE was ostensibly for the purpose of "creating a clear description of the length of performance and substance of it and areas for improvement" (Eikermann Dep.[28] 327:15-328:6)—the FPPE was inexplicably permitted to linger for *four months* from its initial drafting before it was given to Dr. Goldstein on November 30, 2021.[29]

Critically, when the FPPE was initiated on July 30, 2021, there were no documented performance issues with Dr. Goldstein.[30] When deposed, **neither Dr. Eikermann nor Dr. Leff could identify any specific issues with Dr. Goldstein's performance**.[31] This is especially significant because Dr. Leff was tasked with drafting the FPPE.[32]  This was classic ready-fire-aim thinking: Defendants made up their mind, Plaintiff had to go and now they just needed to find a reason why.

### E.    On October 3, 2021, Defendants Subject Dr. Goldstein to Baseless Criticisms

Despite the absence of any intervening events, the Defendants met with Dr. Goldstein on October 3, 2021, and leveled a series of groundless and undocumented criticisms at him:

(i)    falsely challenged Dr. Goldstein's use of non-clinical days over more than *eight* years;[33]

(ii)    suggested he had used that time for the benefit of his own company;[34]

---

[27] Plaintiff's Response No. 87, 88; Plaintiff's Material Facts 35-36.

[28] References to "Pl. Dep. xxx" refer to the transcript of Plaintiff's deposition taken on May 17, 2023 and August 29, 2023 and attached as Exhibit A to the Declaration of William Anthony, sworn to on September 25, 2024 ("Anthony Decl."); "Eikermann Dep. xxx" refers to the transcripts of Dr. Matthias Eikermann's deposition taken on January 11, 2024 and February 12, 2024 and attached as Anthony Decl. Exhibit B; "Leff Dep. xxx" refers to the transcript of Dr. Jonathan Leff's deposition taken on February 15, 2024 and attached as Anthony Decl. Exhibit C; "Vydynathan Dep. xxx" refers to the transcript of Dr. Amaresh Vydynathan deposition taken on December 20, 2023 and attached as Anthony Decl. Exhibit D.   ECF. Nos. 69-1 - 69-4.

[29] Plaintiff's Response No. 88; Plaintiff's Material Facts 35-36.

[30] Plaintiff's Response No. 87, 88; Anthony Decl. Exs. Eikermann Depo. 351:4-367:6; Leff Depo. 181:20-183:21. Plaintiff's Material Facts 35-38.

[31] Plaintiff's Response No. 87, 88; Anthony Decl. Exs. Eikermann Depo. 351:4-367:6; Leff Depo. 181:20-183:21. Plaintiff's Material Facts 35-38.

[32] Plaintiff's Response No. 87; (Leff Depo. 181:20-183:21); Glatter Decl. Ex 8(D006035-D006039 at D006036); Plaintiff's Material Facts 35-38.

[33] Plaintiff's Response No. 97; Plaintiff's Material Fact 42.

[34] Plaintiff's Response No. 97; Plaintiff's Material Fact 42.

(iii)    challenged Dr. Goldstein's professionalism and how he responded to feedback;[35]

(iv)    elevated a single, previously resolved January 8, 2021 incident to suggest a "pattern of inappropriate communication and unprofessional behavior;"[36] and

(v)    told him he would not be promoted.[37]

Defendants *never* provided any documentation to support *any* of the accusations against Dr. Goldstein[38] and none of these issues were raised in connection with the 2020 denial of his promotion[39] or his exceptional 2021 Review.[40]

### F.    November 30, 2021 Meeting and Issuance of FPPE to Dr. Goldstein

On November 30, 2021, Dr. Goldstein attended a meeting with Drs. Eikermann, Straker, and Felder.[41] During this meeting, Dr. Eikermann criticized Dr. Goldstein's relationships with colleagues and his professionalism, issues that were not raised in Goldstein's 2021 Review, during the October 3, 2021 meeting, or further discussed, documented, or clarified in any way.[42]

At the same meeting, Dr. Goldstein was also accused of having "too many complaints" against him. In reality, this was a reference to *one single* complaint: a November 2, 2021 email sent by Dr. Nicole Nevadunsky regarding a dispute which arose during an earlier medical procedure in which Dr. Goldstein assisted.[43]  Other than what Dr. Eikermann verbally relayed to him at the meeting, Dr. Goldstein was never presented with any conclusions about the Nevadunsky complaint, nor did he engage in any discussions about the incident or receive any written

---

[35] Plaintiff's Response No. 98; Plaintiff's Material Fact 42.
[36] *See* Plaintiff's Response Nos. 47, 97, and 98; Plaintiff's Material Fact 42.
[37] Plaintiff's Material Fact 43.
[38] Plaintiff's Response No. 87, 88; Anthony Decl. Exs. Eikermann Depo. 351:4-367:6; Leff Depo. 181:20-183:21. Plaintiff's Material Facts 35-38, 42, 44; Goldstein Decl. ¶ 38.
[39] Plaintiff's Material Facts 11, 12, 39.
Glatter Decl. Ex. 1 (D000931-D000951) and Glatter Ex. 4 (D002589-D002590).
[40] Plaintiff's Material Fact 22; Glatter Decl. Ex. 2 (D000071-D000075).
[41] Plaintiff's Material Fact 45; Anthony Dec. Ex. SS (TR 000001-TR 000050).
[42] Plaintiff's Material Fact 46; *see generally* Anthony Dec. Ex. SS (TR 000001-TR 000050, including at TR000010-TR000011, 10:24-11:2).
[43] Plaintiff's Material Fact 47; Anthony Dec. Ex. SS (TR 000001-TR 000050 at TR000002-TR000006, 6:15-16); and Goldstein Decl. ¶ 40.

conclusions, formal opinions, or commentary from Defendants.[44]  It was a non-issue.  In criticizing Dr. Goldstein, Dr. Eikermann made clear he did not speak to relevant witnesses about the complaint, including a nurse, Preetha Mathews, who described Dr. Goldstein as behaving appropriately and as "helpful" while taking care of the patient.[45]  Ms. Mathews' account is especially significant because she memorialized her contemporaneous recollection of events as well as her conversation with Dr. Mikhail Chernov, former Associate Professor of Anesthesiology and Clinical Site Director (and Dr. Goldstein's then supervisor) about it.[46]  These facts did not fit Dr. Eikermann's narrative, so he drew his own, factually unsupported conclusions and bootstrapped them into the already drafted FPPE.[47]

The FPPE which was issued on November 30, 2021, was dated October 3, 2021—*two months prior*.[48]  By his own description, Dr. Eikermann referred to the FPPE as "a little outdated" but said that it contained things for Dr. Goldstein "to consider,"[49] and listed an April 15, 2022 date by which his progress would be reviewed.  At that time, "if your performance does not meet expectations and/or there are additional performance issues identified, you will be subject to disciplinary action, including potential loss of employment."[50]

In addition to the genuine disputes of material fact created by the faulty foundation on which the FPPE issued, there is also a material issue of fact regarding *which version* of the FPPE

---

[44] Plaintiff's Material Fact 48; Goldstein Decl. ¶ 41.
[45] Plaintiff's Material Facts 49-50. Anthony Decl. Ex. SS (TR 000001-TR 000050 at TR000004, 4:4-10 and TR000023, 23:2-8); Goldstein Decl. ¶ 42; Ms. Mathews memorialized her account of a November 8, 2021 conversation with Dr. Mikhail Chernov, former Associate Professor of Anesthesiology and Clinical Site Director (and Plaintiff's supervisor) Glatter Decl. Ex. 12 (D008524).
[46] Plaintiff's Material Facts 47-50. Anthony Decl. Ex. SS (TR 000001-TR 000050 at TR000004, 4:4-10 and TR000023, 23:2-8); Goldstein Decl. ¶ 42; Ms. Mathews memorialized her account of a November 8, 2021 conversation with Dr. Mikhail Chernov, former Associate Professor of Anesthesiology and Clinical Site Director (and Plaintiff's supervisor) Glatter Decl. Ex. 12 (D008524).
[47] Plaintiff's Material Fact 50; Anthony Decl. Ex. SS (TR 000001-TR 000050 at TR000004, 4:4-10 and TR000023, 23:2-8); Goldstein Decl. ¶ 42.
[48] Plaintiff's Material Fact 52-55; Ex. SS (TR 000001-TR 000050 at TR000006-TR000007, 6:18-7:6); *see also* Plaintiff's Response No. 114.
[49] Plaintiff's Material Fact 53.
[50] *See* Glatter Decl. Ex. 10 at D006647.

was actually issued to Dr. Goldstein.[51] This is a critical issue because the date referenced for follow-up in the FPPE that Dr. Goldstein actually received was April 15, 2022, which gave Dr. Goldstein just eleven (11) weeks before he would potentially need to give the required two months' advance notice to resign (i.e. on or before February 15, 2022) to avoid the career blight of a termination for cause on his record.[52]

### G. Dr. Goldstein is Subject to A Hostile Work Environment and Constructive Discharge

The contrived criticisms against Dr. Goldstein at the October 3, 2021 and November 30, 2021 meetings and FPPE rendered his situation unbearable, and, for the many reasons detailed *infra*, effected a hostile work environment.[53] He was also subject to a constructive discharge because, following these meetings, Defendants refused to accommodate Goldstein, kept him on overnight call during the 2021 holiday season,[54] and Dr. Eikermann failed to have regular meetings with him (despite as stated in the FPPE).[55] Defendants further refused to accommodate Dr. Goldstein's disability by assigning him *even more* overnight call for 2022.[56] This combination of factors caused Dr. Goldstein to reasonably predict that he faced inevitable, involuntary, and "for cause" termination.[57] Dr. Goldstein was thus forced to resign his employment with Montefiore on February 13, 2022 to avoid risking further damage to his career or health.[58]

### III. LEGAL ARGUMENT

---

[51] *See* Plaintiff's Response No. 114; Plaintiff Material Facts 52-55. The last paragraph of the unsigned, September 10, 2021 version of the FPPE Anthony Decl. Ex. TT (D000508-D000510), provided, "[a]t the end of the FPPE Performance Improvement Plan implementation, your progress will be reviewed with your mentor and Departmental senior leadership no later than **July, 2022**." Notably, this was *not* the FPPE that was presented to Plaintiff. In the last paragraph, of the signed, October 3, 2021 version of the FPPE, **the date is moved up by three (3) months to April 15, 2022**. Glatter Decl. Ex.10 (D006645-D006647 at D006647). Thus, the FPPE actually furnished to Plaintiff set a date just 4.5 months away for review of Plaintiff's progress. This explains the *immediate* pressure that Plaintiff felt regarding the viability of his position and his belief he was subject to inevitable termination.
[52] Plaintiff's Material Facts 52-60; Goldstein Decl. ¶¶ 43-47.
[53] *See* Plaintiff's Material Facts 42-51, 56-61.
[54] *See* Plaintiff's Material Fact 58.
[55] *See* Plaintiff's Material Fact 57.
[56] *See* Plaintiff's Material Facts 57-59.
[57] *See* Plaintiff's Material Facts 42-51, 56-61.
[58] Plaintiff's Material Facts 56-60; Goldstein Decl. ¶¶ 43-47.

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In evaluating such motions, all reasonable inferences are drawn "in favor of Plaintiff as the non-moving party." *New York State v. C&S Wholesale Grocers, Inc.*, 24 F.4th 163, 170 (2d Cir. 2022). The Court "must disregard all evidence favorable to" Defendant and "give credence to the evidence favoring [Plaintiff] as well as that evidence supporting [Defendant] that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000).

### A.    Dr. Goldstein was Subjected to Discrimination Due to Disability

#### 1.    Dr. Goldstein Meets the *Prima Facie* Case of Discrimination Under the ADA, NYSHRL, and NYCHRL

"Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013). "Under this framework, a plaintiff bears the initial burden of establishing a *prima facie* case of discrimination." *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 328 (S.D.N.Y. 2020). When establishing a *prima facie* case of discrimination under the ADA, the non-moving party must show that: (1) the employer is subject to the ADA; (2) the employee was disabled within the meaning of the ADA; (3) the employee was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation and (4) the employee suffered adverse employment action because of a disability. *See Woolf v. Strada,* 949 F.3d 89, 93 (2d Cir. 2020). To establish discrimination under the ADA, a plaintiff must also prove that disability was the "but-for" cause of the employer's adverse employment actions. *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019).

Defendants concede that Dr. Goldstein has established elements 1 and 3 above.

With respect to element 2, Dr. Goldstein was disabled with both Severe Chronic Obstructive Sleep Apnea and long-Covid, which are recognized disabilities under the ADA. [59] *See Fulton v. City of New York*, 20-CV-144 (WFK)(PK), 2021 U.S. Dist. LEXIS 268140, *21-23 (E.D.N.Y. Mar. 15. 2021). "Sleeping, breathing, and hearing are clearly 'major life activities,' as they are enumerated in the statute." *Id.*, at *22 (*citing* 42 U.S.C. § 12102(2)(A).) The NYSHRL and NYCHRL "have a broader definition of disability than does the ADA; neither statute requires any showing that the disability substantially limits a major life activity," *Ugactz v. UPS, Inc.,* No. 10-CV-1247, 2013 U.S. Dist. LEXIS 43481, at *14 (E.D.N.Y. Mar. 26, 2013), so Dr. Goldstein meets these lower standards, too. [60]

As to the fourth element, remarkably, Defendants claim that Dr. Goldstein never suffered an adverse employment action. In fact, Dr. Goldstein suffered severe adverse employment actions when Defendants took his entire career off track by failing to promote him[61] and plotting a FPPE within weeks of his accommodation request. [62] Defendants perpetuated adverse employment actions by subjecting him to a hostile work environment and constructively discharging him through the many actions taken against him including various meetings and ultimately issuing the

---

[59] Plaintiff's Material Facts 23, 32, and 59. Anthony Decl. Ex. Z (D000767-D000768); Anthony Decl. Ex. DD (D000774-D000775); Anthony Decl. Ex. EE (D000779-D000780). Dr. Goldstein's health care provider, Dr. Michael Thorpy (Montefiore's own Director, Sleep-Wake Disorders Center) expert in sleep disorders referred to "changes in sleep patterns after illness due to Covid." Anthony Decl. Ex. Z (D000767-D000768). Under Points N.2 and N.4 of the relevant EEOC guidance (which recognizes "long-Covid" was not initially a standard term), individuals like Dr. Goldstein who experiencing lingering effects of Covid-19 can be deemed disabled under the law. https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#N

[60] Defendants rely on *Garcia v. Dept. of Corr. Servs.*, No. 05 Civ. 5138 (SAS), 2006 WL 3549764 (S.D.N.Y. Dec. 5, 2006) for the proposition that sleep apnea is not a disability under the ADA. But, unlike the plaintiff in Garcia, who "has not shown that he could not function at work, had serious difficulty performing tasks, or was otherwise seriously impaired by his sleep apnea [and] … has offered nothing more than a mere grievance against defendants for failing to change his work schedule." Plaintiff, on the other hand, has shown that he physically could not cover overnight shifts. And, unlike Garcia, who had ordinary sleep apnea, Dr. Goldstein was diagnosed with Chronic Obstructive Sleep Apnea. Finally, Garcia analyzed the ADA claims, but not the State or City Law standards.

[61] Failure to promote is an adverse employment action if the employee applied for the position, which Dr. Goldstein certainly did by providing his materials and credentials for promotional evaluation. *Smith v. City of New York*, 385 F. Supp. 3d 323 (S.D.N.Y. 2019); *Haynes* 2024 U.S. Dist. LEXIS 56471, at *41-42.

[62] Plaintiff's Response No. 87, Plaintiff Material Fact 35; Glatter Decl. Ex. 8 (D006035-D006039).

FPPE.[63]

Defendants argue that Dr. Goldstein was not subject to an adverse action in 2021 because he was denied a promotion before he disclosed his disability. But in 2020, Dr. Goldstein's employment with Defendants was on an upward trajectory. Goldstein consistently received great reviews,[64] great feedback, and was told that he needed just a few more publications to ensure his promotion in 2021.[65] And Dr. Goldstein was tendered for promotion by the full CAP in 2020.

Prior to his accommodation request, Dr. Goldstein was a strong candidate for promotion in 2021, and he received a stellar review (signed on March 9, 2021), all of which changed immediately following Dr. Goldstein's requests. *See* Sections II.A, B, and C, *supra.* With this showing, Dr. Goldstein meets the required but-for causation supporting an ADA discrimination claim. *Wellner v. Montefiore Med. Ctr.*, 2019 U.S. Dist. LEXIS 147844, at *22 (specifying "[b]ut-for causation does not require that [discrimination] was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the [discriminatory] motive") (citation omitted). Moreover, Defendants' explanations for why Dr. Goldstein was excluded from the pool of applicants for promotion, not only fail to resolve the issue, but also raise genuine issues of fact, as detailed below in Section III.A.2.

Dr. Goldstein states a *prima facie* case of discrimination.

Where, as here, the plaintiff "pleads a disability discrimination claim under the more rigorous ADA standard, [he] thus has also stated claims under the NYSHRL and the NYCHRL." *Miller v. E. Midwood Hebrew Day Sch.,* 19 CV 5580, 2021 U.S. Dist. LEXIS 28898, at *11 (E.D.N.Y. Feb 15. 2021)(*citing Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir.

---

[63] *See generally* Sections II.C, D, E, and F.
[64] Goldstein Decl. ¶ 4.
[65] Plaintiff's Material Facts 11, 12, 22, 39; Glatter Decl. (Ex. 1 D000931-D000951 at D000932); Glatter Ex. 4 (D002589-D002590).
.

2009) (the ADA and NYSHRL constitute a "floor below which the City's Human Rights law cannot fall.").

### 2. Defendants' Employment Decision Was Based In Whole Or In Part On Discrimination

Assuming, *arguendo*, that Defendants carry their burden to show a legitimate non-discriminatory justification for their actions, the admissible evidence nonetheless demonstrates circumstances that would permit a rational factfinder to conclude that Defendant's' decisions were more likely than not based in whole or in part on discrimination. *Walsh v. N.Y. City Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016) In cases involving claims of employment discrimination "an extra measure of caution is merited in [considering] summary judgment" because "direct evidence of discriminatory intent is rare and such intent must often be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys., Inc*., 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted). Nonetheless, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment" and meet his burden under the *McDonnell Douglas* framework. *Holcomb v. Iona Coll.,* 521 F.3d 130, 138 (2d Cir. 2008)Ultimately, the test for summary judgment "is whether the evidence can reasonably support a verdict in plaintiff's favor." *James v. N.Y. Racing Ass'n,* 233 F.3d 149, 157 (2d Cir. 2000). *Holcomb v. Iona Coll.,* 521 F.3d 130, 138 (2d Cir. 2008). Dr. Goldstein more than accomplishes such a showing.

### a. Genuine Issue Of Fact Regarding Failure To Promote

Defendants argue that, because Dr. Goldstein was denied promotion in 2020, the decision not to promote him in 2021 was *ipso facto* non-discriminatory. This argument fails.

Failure to promote, itself, is an adverse employment action. *McNamara v. Metro. Trans. Auth.,* 13 Civ. 2411, 2015 U.S. Dist. LEXIS, 148933 (S.D.N.Y. Nov. 3, 2015), and failure to do so in "close temporal proximity" to an accommodation request is "sufficient circumstantial

evidence to raise an inference of disability discrimination." *Haynes v. City of New York,* 19-cv-11007 (PGG)(JW), 2024 U.S. Dist. LEXIS 56471, at *44 (S.D.N.Y. Mar. 26, 2024). Dr. Goldstein's position is even more stark because Defendants not only failed to promote Dr. Goldstein (after he met the criteria set by Defendants the prior year), but did not even *consider* him for promotion.

The Defendants' refusal to include Dr. Goldstein in the group of applicants for promotion is unusual for several reasons. In 2020, Montefiore found "[w]hile Dr. Goldstein technically meets all guidelines, he needs at least 5-6 more recent publications."[66] By the time he was eligible for promotion in 2021, Dr. Goldstein *exceeded* Defendants' stated criteria.[67] Despite exceeding Defendants' criteria, Plaintiff was not even submitted to CAP for evaluation.[68]

This is highly irregular. Montefiore's own procedures regarding promotion identify the third step in the process as, "[t]he departmental promotions committee *reviews* material and endorses or declines to endorse a candidate."[69] As Plaintiff's expert, Dr. Edward Andrew Ochroch, noted in his report, "[i]n my nearly three decades in academic medicine, I have never heard of any physician being excluded from consideration for promotion by a committee on appointments and promotions, and Dr. Leff, the Anesthesia Department's Vice Chair of Professional Affairs, is not aware of any physician other than Dr. Goldstein having been similarly excluded from promotion by a committee on appointments and promotions."[70]

As Montefiore's Dr. Leff admitted:

> Q Just so it's clear, because you gave a long answer to a fairly simple question. I just want to know, has there been any person other than Dr. Goldstein that's been excluded from the

---

[66] Plaintiff's Material Fact No. 39; Glatter Decl. (Ex. 1 D000931-D000951 at D000932); Glatter Ex. 4 (D002589-D002590).

[67] Plaintiff's Material Fact No. 39; (Goldstein Decl. ¶ 32; Glatter Decl. Ex. 9 (D005981-D006030 at D005993-D005994).

[68] Plaintiff's Material Fact No. 39; Dr. Leff Depo.: 177:2-179:3.

[69] *See* Anthony Decl. Ex. H (D000677-D000708) at D000681 (emphasis added).

[70] Plaintiff's Material Fact No. 40; Glatter Decl. Ex. 14 (Expert Report of Edward Andrew Ochroch, M.D., dated March 18, 2024, at ¶ 31.).

consideration of the anesthesia department's committee on appointment and promotions after submitting a CV and teaching portfolio?

A Yeah, not to my knowledge.[71]

Dr. Goldstein's disability is the but-for cause of the *failure to even submit* him for promotion. As soon as Defendants learned of Dr. Goldstein's disability and request for accommodation, they began treating him differently. Immediately following his April 19, 2021 accommodation request, Defendants compiled every hint of any issue they could contrive against Dr. Goldstein—virtually none of which were previously documented.[72] After Defendants laid this pretextual foundation of manufactured performance issues, in the days and weeks immediately following his renewed July 1, 2021 request for reasonable accommodation, Defendants refused to even tender him for promotion and instead initiated the FPPE process.[73] A straight line can be drawn between these events, and the peculiar refusal to even present Dr. Goldstein for promotion, at a minimum, raises genuine issues of material fact.

**b.    Defendants Create Genuine Issues of Fact with their Explanation for Why Dr. Goldstein Was Not Promoted**

Defendants focus primarily on the denial of Dr. Goldstein's promotion and hope that the Court will overlook that Dr. Goldstein was excluded from the group of candidates for promotion in 2021 despite meeting Defendants' stated criteria for promotion.

Rather than explain why Goldstein was treated so differently in 2021 than he was in 2020, Defendants rely on: (1) Montefiore's purported receipt of "multiple employee complaints," (2) Dr. Goldstein's need for formal coaching, and (3) Goldstein's FPPE.    None of Defendants' justifications holds up to scrutiny.

---

[71] Plaintiff's Material Fact No. 41; Leff Depo. at 185:10-18.
[72] *See generally* Plaintiff's Response No. 82 and Glatter Decl. Ex. 3 (D003912-D003934); Plaintiff's Material Facts 23-31; Sections II.B-C, *supra*.
[73] Plaintiff's Response Nos. 87, 88; Plaintiff's Material Facts 33-35, 39-41.

First, the "multiple employee complaints" on which Defendants rely for denial of Dr. Goldstein's promotion consist of *one incident* (on January 8, 2021) before Defendants denied Dr. Goldstein's promotion.[74] That one incident had long since been resolved.[75] Indeed, two months *after* that incident, Goldstein's 2021 Review rated him as "excellent" in *all* categories.[76]

Defendants' consistent and uniformly positive view of Dr. Goldstein's work only changed when Dr. Goldstein requested accommodation.[77] In such circumstances, the Second Circuit has held, "sudden and unexpected downturns in performance reviews can help show discrimination." *Haynes*, 2024 U.S. Dist. LEXIS 56471, at *45-46 (*citing Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998)).

Second, Dr. Goldstein's purported need for formal coaching raises more factual issues than it resolves because of Defendants' own conflicting explanations for initiating and then abruptly cancelling the coaching sessions.[78] On the one hand, Defendants claim Dr. Goldstein needed coaching, but without indicating why, Dr. Eikermann unilaterally cancelled the coaching, justifying it, "[a]s a consequence of recent events, and in consideration of the available career development resources in the Department, we have decided to put this engagement on hold. . . . ."[79] Dr. Goldstein does not know to what "recent events" refers in the email.[80]

Third, the "receipt of a FPPE" does not explain why Dr. Goldstein was not tendered for promotion.[81] Dr. Goldstein was excluded from promotion in July 2021, but he did not receive the FPPE until four months later in November 2021. Thus, the FPPE cannot be a basis on which to

---

[74] Plaintiff's Response Nos. 47 and 98; Plaintiff's Material Facts 14-21, 28, 42.
[75] Plaintiff's Response Nos. 47-50; Plaintiff's Material Facts 14-21, 28.
[76] Plaintiff's Material Fact 22; Glatter Decl. Ex. 2 (D000071-D000075).
[77] *See generally* Sections II.B, C, and D.
[78] Plaintiff's Response Nos. 83-85.
[79] Plaintiff's Response No. 85; Glatter Decl. Ex. 7 (D008529-D008544 at D008541).
[80] Goldstein Decl. ¶ 33.
[81] Plaintiff's Response No. 87, 88; Plaintiff's Material Facts 35-38, 52.

refuse to even evaluate his promotion.[82]  And when the FPPE was initiated there were no documented performance issues with Dr. Goldstein and **neither Dr. Eikermann nor Dr. Leff**[83] **could identify any specific issues with Goldstein's performance**.[84]  Instead, both the initiation of the FPPE and the denial of promotion were contemporaneous with Dr. Goldstein's July 1, 2021 accommodation request and had nothing to do with the long-resolved January 8, 2021 incident or the withdrawn professional coaching.[85]

In a similar case where, like Dr. Goldstein, the plaintiff had no disciplinary issues until she revealed her disability and there were disputes regarding the substance of the underlying disciplinary actions—the court denied summary judgment.  *Nash v. Homegoods, Inc.*, 16-cv-1043 (AMD)(VMS), 2019 U.S. Dist. LEXIS 55151, at *27-28 (E.D.N.Y. Mar. 29, 2019).  Similarly, summary judgment was reversed and the case remanded where the plaintiff was, *inter alia*, abruptly subject to a change in the quality of evaluations.  *Danzer*, 151 F.3d at 56.

### 3. Defendants Discriminated Against Dr. Goldstein Under the NYSHRL and NYCHRL

To the extent this Court believes that Defendants should prevail under their motion with respect to Dr. Goldstein's federal claims (it should not), Dr. Goldstein's State and City law claims should nonetheless survive.  Discrimination claims under the NYSHRL and NYCHRL parallel or are more generous to plaintiffs than federal law.  *Brooklyn Ctr. for Indep. Of the Disabled v. Metro. Transp. Auth.*, 11 F.4th 55, 68 (2d Cir. 2021). Both the NYSHRL and NYCHRL provide broader protections for individuals with disabilities than does the ADA. *Vig v. New York Hairspray Co., L.P.,* 885 N.Y.S.2d 74, 77(1st Dept. 2009).

---

[82] Plaintiff's Response Nos. 87, 88; Plaintiff's Material Facts 34-38.
[83] Plaintiff's Response No. 87; (Leff Depo. 181:20-183:21); Glatter Decl. Ex 8(D006035-D006039 at D006036); Plaintiff's Material Facts 35-38.
[84] Plaintiff's Response No. 87, 88; Anthony Decl. Exs. Eikermann Depo. 351:4-367:6; Leff Depo. 181:20-183:21. Plaintiff's Material Facts 35-38.
[85] Plaintiff's Response No. 87.

Further, "the NYCHRL requires an independent analysis." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). The New York City Council expressly "confirmed the legislative intent to abolish parallelism between the NYCHRL and federal and state anti-discrimination law." *Campbell v. Cellco P'ship*, 860 F. Supp. 2d 284, 295 (S.D.N.Y. 2012). The NYCHRL analysis requires courts to analyze claims "more liberally than [claims under] its federal and state counterparts," *id.* at 295, and "broadly in favor of discrimination plaintiffs," *Mihalik*, 715 F.3d at 109.

Where, as here, Dr. Goldstein establishes discrimination was "one of the motivating factors, even if it was not the sole motivating factor, for [Plaintiff's] unequal treatment." *Id.* (internal quotation marks and citation omitted), Defendants are entitled to summary judgment <u>only</u> where "the record establishes as a matter of law that discrimination played ***no role*** in [their] actions." *Bacchus v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 214, 246 (E.D.N.Y. 2015) (internal quotation marks and alteration omitted) (quoting *Mihalik*, 715 F.3d at 110 n.8).

Here, Defendants fall well short of their burden.

### B.    Defendants Stopped Accommodating Dr. Goldstein Which is a  Refusal to Accommodate Him

"Failure to accommodate is a type of disability discrimination that also follows the *McDonnell Douglas* burden-shifting scheme." *Felix v. N.Y.C. Dep't. of Educ.*, 21 Civ. 6109 (LGS) 2023 U.S. Dist. LEXIS 127610, at *22 (S.D.N.Y. Jul. 24, 2023) (*citing Berger v. N.Y.C. Police Dep't*, 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018)). "The standard for a failure-to-accommodate claim is identical to that of a discrimination claim except that, "for the fourth factor, [Plaintiff] must show by a preponderance of the evidence that [her] employer refused to make a reasonable accommodation." *Id.*, 2023 U.S. Dist. LEXIS 127610, at *22 (*citing Owens v. City of New York Dep't of Educ.,* No. 21-2875, 2022 U.S. App. LEXIS 35393, at *3 (2d Cir. Dec. 22, 2022)).

18

The accommodation of no overnight call was facially reasonable inasmuch Defendants were able to provide it—yet later chose not to do so.[86]   Defendants ultimately refused to accommodate Dr. Goldstein because they repeatedly asked him to work overnight call, despite multiple notes from his treating physician indicating that he could not. This situation is comparable to that of the plaintiff in *Felix*, 2023 U.S. Dist. LEXIS 127610, at *29, where, despite "Plaintiff ma[king] clear the effects on her health" the employer denied her request for six months, which "demonstrates the lack of 'good faith' efforts." Indeed, Defendants (mostly physicians themselves) repeatedly subjected Dr. Goldstein to queries regarding whether he still required accommodation, despite no indication in his health care provider's notes that his reasonable accommodation was for a fixed period or otherwise had an end date.[87] Defendants' repeated attempts to discourage Dr. Goldstein's use of his medically necessary accommodation required Dr. Goldstein to secure multiple notes from his doctor on April 19, 2021, July 1, 2021, and December 28, 2021.[88]

Notwithstanding Dr. Goldstein's repeated requests for the same accommodation, Defendants refused to accommodate him and instead scheduled him to cover overnight shifts.  By December 2021, Defendants—with 7-months' advance knowledge of Dr. Goldstein's medical need for accommodation—requested him to cover previously-assigned[89] sequential overnight call (which apparently they had not re-assigned despite being notified in April, July and again in December of Goldstein's need for an accommodation) and began assigning him additional overnight calls for January 2022 – all directly contrary to Goldstein's medical needs.[90]

Despite the harm to his health, Dr. Goldstein worked the overnight shifts which

---

[86] Plaintiff's Material Facts 58-59; Plaintiff's Response Nos. 63-71.
[87] Anthony Decl. Exhibits Z, DD, and EE.
[88] Plaintiff's Material Facts 58-59; Plaintiff's Response Nos. 63-71.
[89] Defendants make much of the fact that the overnight call was "previously assigned" as if schedules are set in stone.  Plaintiff submitted requests for the same accommodation in April, July and December – Defendants had more than ample notice that overnight call during the holiday season was contrary to Plaintiff's documented medical necessity.
[90] Plaintiff's Material Facts 58-59; Plaintiff's Response Nos. 63-71.

immediately followed his receipt of the FPPE.  Goldstein naturally felt tremendous pressure to work overnight call, believing his career was in peril, so he could not risk rocking the boat by making his accommodation request for what would be a *fourth* time.[91]

Defendants' approach of accommodating Dr. Goldstein—only when they choose to—was not an actual accommodation and resulted in Dr. Goldstein working overnight call despite his documented medical need to the contrary and multiple requests for accommodation. *Felix*, 2023 U.S. Dist. LEXIS 127610, at *27; *see also Sansone v. Brennan*, 917 F.3d 975 (7th Cir. 2019) (finding revocation of accommodation violates the ADA where plaintiff's disability was initially accommodated, but supervisor later attempted to revoke accommodation); *Torres v. New York City Dept. of Education*, No. 18-CV-2156 (NGG) (RML), 2019 U.S. Dist. LEXIS 82897 (E.D.N.Y. May 15, 2019) (modifying or rescinding accommodation without proper justification violates the ADA); *Isbell v. John Crane, Inc.*, 30 F. Supp. 3d 725 (N.D. Ill. 2014)(same).

With their refusal to accommodate Dr. Goldstein's disability, Defendants have failed to meet their federal, state, and city legal obligations and are precluded from summary judgment.

### C.    Defendants Effected Both a Hostile Work Environment and Constructive Discharge

#### 1.    Hostile Work Environment

Hostile work environment claims under the ADA are evaluated under the Title VII framework. *Felix*, 2023 U.S. Dist. LEXIS 127610, at *39 (*citing Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 69 (2d Cir. 2019)). "To prevail on such a claim, Plaintiff must show "(1) that the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello,* 294 F.3d 365, 373 (2d Cir.

---

[91] Plaintiff's Material Facts 58-60; Plaintiff's Response Nos. 63-71.

2002). "The relevant inquiry focuses on both objective and subjective hostility: A work environment will be considered hostile if a reasonable person would have found  it to be so and if the plaintiff subjectively so perceived it." *Pucino v. Verizon Communs., Inc.*, 618 F.3d 112, 119 (2d Cir. 2010) (internal quotations omitted).

"To survive summary judgment on a hostile work environment claim, a plaintiff must first show "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [the plaintiff's] working environment.'" *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000)), *aff'd*, 629 F.3d 276 (2d Cir. 2010). Ultimately, the "question of whether a work environment is sufficiently hostile . . . is one of fact," and "summary judgment is appropriate ***only*** if it can be concluded as a matter of law that no rational juror could view the defendant's conduct as an intolerable alteration of the plaintiff's working conditions." *Felix*, 2023 U.S. Dist. LEXIS 127610, at *40 (emphasis supplied) (*citing Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001)). This determination may only be made by carefully examining to "the totality of the circumstances" and evaluating individual discriminatory incidents "cumulatively," rather than by asking whether any single "incident of harassment 'standing alone' is sufficient to sustain [the] hostile work environment claim." *Williams v. N.Y.C. Hous. Auth.,* 61 F.4th 55, 74 (2d Cir. 2023).

Facially neutral incidents are also included in a "totality of the circumstances" when examining a hostile work environment claim. *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547-548 (2d Cir. 2010).  Such facially neutral events need not involve overt references to the protected category in order to be deemed hostile.  For example, in *Pucino*, 618 F.3d at  117-119, the Second Circuit held that both facially neutral actions directed to a member of the protected category, such as assigning work in more dangerous areas, failing to provide assistance, denial of tools and

equipment, and access to restrooms, were among the factors which led to reversal and remand of summary judgment determination. Similarly, as here, wrongful accusations of unprofessional conduct may also be "a basis for a hostile work environment claim." *Felix*, 2023 U.S. Dist. LEXIS 127610, at *20.

In addition, where plaintiff provided "a number of doctors' notes . . . express[ing] the severity of the situation," a reasonable jury could find that Defendants' refusal to accommodate Plaintiff could be "both physically threatening" and "worsen Plaintiff's health" such that it was reasonably perceived by Plaintiff as creating a "hostile or abusive environment" because of his disability. *Felix,* 2023 U.S. Dist. LEXIS 127610, at *41-42.

Dr. Goldstein has much in common with the plaintiff in *Felix* because, during a three-month period (October - December 2021) Defendants orchestrated a series of actions against him—despite no prior documentation of any performance issues and a history of stellar performance reviews[92]—that created both a hostile work environment and supported constructive discharge.

At an October 2021 meeting, with no supporting documentation, Defendants, *inter alia*:

(i)    falsely challenged Dr. Goldstein's use of non-clinical days (despite his consistent use of non-clinical days over more than *eight* years);[93]

(ii)   suggested he had used that time for the benefit of his own company (despite the lack of evidence to support this false accusation);[94]

(iii)  challenged Dr. Goldstein's professionalism and how he responded to feedback (despite every performance review to the contrary); [95]

---

[92] Glatter Decl. Ex. 2; Goldstein Decl. ¶ 4.

[93] Plaintiff's Response No. 97; Plaintiff's Material Fact 42. In addition, Dr. Goldstein testified that another faculty member, Dr. Jerry Chao, had approximately 12 times the number of non-clinical days over the same eight year period, yet Dr. Goldstein and Dr. Chao had a similar number of publications and, among other things, Dr. Goldstein had more research presentations at conferences than Dr. Chao. Dr. Goldstein concluded that Dr. Eikermann was targeting him, and he is not aware of Dr. Chao being subject to any negative treatment despite what would appear to be his substantially lower productivity than Dr. Goldstein and other negative clinical outcomes. Anthony Decl. Ex. A (Plaintiff Dep.at 347:25-350:9; 392:13-393:4).

[94] Plaintiff's Response No. 97; Plaintiff's Material Fact 42.

[95] Plaintiff's Response No. 98; Plaintiff's Material Fact 42.

(iv)    elevated the January 8, 2021 incident to suggest a "pattern of inappropriate communication and unprofessional behavior;" (despite the fact that one incident is not a "pattern," and, in any case, this one incident had already been resolved, with no wrongdoing whatsoever attributed to Dr. Goldstein)[96]; and

(v)    told him he would not be considered for promotion (despite the fact that he had exceeded all of the criteria Defendants set forth for promotion just one year prior).[97]

These criticisms came with no warning or supporting documentation. None of these issues were mentioned in connection with Dr. Goldstein's 2020 promotion submission nor his 2021 Review.[98]

These only became sources of concern *after* Dr. Goldstein's accommodation request.

Then, on November 30, 2021, without any intervening—or prior—performance issues, Dr.

Eikermann further subjected Dr. Goldstein to a hostile work environment by:

(vi)    putting Goldstein onto the FPPE which set a review date of April 15, 2022 by when he would be "subject to disciplinary action, including potential loss of employment";[99]

(vii)    criticizing Goldstein for the November 2021 incident with Dr. Nevadunsky with no effort to speak to Dr. Goldstein or other material witnesses;[100]

(viii)    permitting Goldstein's complaints to Human Resources to go unanswered and uninvestigated;[101]

(ix)    instructing Dr. Goldstein direct any issues to himself and Dr. Straker, rather than to Human Resources, removing Goldstein's best avenue for raising his concerns;[102]

(x)    identifying a skewed process for how complaints against Goldstein would be addressed and telling him, the FPPE "means you do not meet expectations;"[103] and

(xi)    insinuating to Dr. Goldstein that Defendants would find a reason to fire him at the end of the FPPE period—no matter what.[104]

---

[96] *See* Plaintiff's Response Nos. 47, 97,  and 98; Plaintiff's Material Fact 14-21, 42.

[97] Plaintiff's Material Facts 10-12, 43;Glatter Decl. Ex. 1 (D000931-D000951) and Glatter Ex. 4 (D002589-D002590).

[98] Plaintiff's Response Nos. 50, 97, 98, 104, 105, 115; Plaintiff's Material Facts 10, 11, 12, 22, 42-51.

[99] There is a material issue of fact about which version of the FPPE was given to Dr. Goldstein. This is a critical issue because the version on which Defendants rely set a review date three months later than the version he actually received, which explains the time pressure Dr. Goldstein felt. Plaintiff's Response Nos. 114-118. The FPPE dated October 3, 2021 was the version actually received by Plaintiff. (Glatter Decl. Ex. 10 (D006645-D006647); Plaintiff's Material Fact 56; *See also* Section II.F, *supra*.

[100] Plaintiff's Response Nos. 104-105; Plaintiff's Material Facts 46-50.

[101] Goldstein Decl. ¶ 41.

[102] *See* Anthony Decl. Ex. SS (TR 000001-TR 000050 at TR000025-28, 25:24-28:8).

[103] Plaintiff's Material Fact 51; *see also* Anthony Decl. Ex. SS (TR 000001-TR 000050 at TR000023, 23:2-11).

[104] Plaintiff's Response No. 112, Pl. Dep. 181:20 – 182:5.

The pretextual and discriminatory nature of the FPPE is further underscored by the absence of any performance issues in the intervening months between Dr. Goldstein's excellent 2021 Review and the FPPE.[105]  Further, the "professionalism" issues cited in the FPPE have been Defendants' crutch for denial of Dr. Goldstein's promotion, when the full record shows Defendants' discriminatory efforts against Dr. Goldstein flow directly from his accommodation requests,[106] and directly contradict Defendants' assessments of Dr. Goldstein prior to his request for accommodation. Plus, "secretly monitoring" a plaintiff for "future behavior" further demonstrates discrimination. *Haynes*, 2024 U.S. Dist. LEXIS 56471, at *45-46.

And, in addition to all of the above:

(xii)    within weeks of the November 30, 2021, meeting, and, notwithstanding multiple practitioner's notes, Defendants refused to accommodate Dr. Goldstein and began to again schedule Dr. Goldstein for overnight call again. [107]

In the words of *Felix*, Dr. Goldstein reasonably perceived Defendants' conduct over the preceding three months as "both physically threatening and humiliating" and to "worsen Plaintiff's health" such that it was creating a "hostile or abusive environment" because of his disability. *Felix*, 2023 U.S. Dist. LEXIS 127610, at *41-42.

## 2.    Defendants Subjected Dr. Goldstein to a Hostile Work Environment Under the NYSHRL and NYCHRL

As with discrimination claims, Dr. Goldstein is subject to substantially lower standards with respect to his hostile work environment claims under the NYSHRL and NYCHRL than the ADA.  Under the NYSHRL, Dr. Goldstein must merely show that "that he or she was subjected to inferior terms, conditions, or privileges of employment because of the individual's membership in one or more protected categories." *Tortorici v. Bus-Tev*, LLC, No. 17-cv-7507, 2021 U.S. Dist.

---

[105] Plaintiff's Response Nos. 87, 88; Plaintiff's Material Facts 35-38.
[106] Plaintiff's Material Facts 23-38.
[107] Plaintiff's Material Facts 58, 59.

LEXIS 174523, at *13 (S.D.N.Y. Sept. 14, 2021); *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 119 n.16 (S.D.N.Y. 2022).

Under the even more liberal standards of the NYCHRL, a hostile work environment plaintiff "need only [claim] that [the plaintiff] was treated 'less well' than other employees because of [a] protected characteristic." *Tortorici*, 2021 U.S. Dist. LEXIS 174523, at *13; *Samuels v City of NY*, 2023 U.S. Dist. LEXIS 156539, at *24 (SDNY Sep. 5, 2023).

Further to (i)-(xii), *supra*, there can be no question but that Dr. Goldstein was treated less well than similarly situated employees because of his disability and need for accommodation. At the same time that Goldstein was locked out of promotion, two members of the Anesthesiology Department were both considered and promoted in 2021: Dr. Sujatha Ramachandran[108] and Dr. Amaresh Vydyanathan,[109] neither of whom had a disability.[110] Dr. Goldstein, Dr. Ramachandran, and Dr. Vydyanathan all submitted their materials for promotion in 2021 on the Clinician Educator promotion track.[111] Among the requirements listed in Montefiore's "Suggested Guidelines for Promotion to Senior Rank—Clinician-Educator Track" was the number of necessary publications for promotion to Professor: ten.[112] In addition to not having a disability, Dr. Ramachandran's CV listed a total of just one publication (a case report) of which she was the principal author among the nine (9)Peer-Reviewed, PubMed-referenced publications,[113] yet she was promoted. Dr. Goldstein met—and exceeded—the publication requirement at the time he submitted his CV for promotional consideration in 2021 because he had sixteen (16) relevant publications (of which

---

[108] Glatter Decl. Ex. 17 (Transcript of the Deposition of Sujatha Ramachandran, dated December 4, 2023) at 37:7-14.

[109] Anthony Decl. Ex. D (Transcript of the Deposition of Amaresh Vydyanathan, dated December 20, 2023) at 79:6-19.

[110] Glatter Decl. Ex. 17 (Transcript of the Deposition of Sujatha Ramachandran, dated December 4, 2023) at 96:16-24, 101:5-8; Anthony Decl. Ex. D (Transcript of the Deposition of Amaresh Vydyanathan, dated December 20, 2023) at 103:22-104:4.

[111] Defendants' Undisputed Fact No. 33 (re Dr. Goldstein); Glatter Decl. Ex. 17 (Transcript of the Deposition of Sujatha Ramachandran, dated December 4, 2023) at 47:13-24;  Anthony Decl. Ex. D (Transcript of the Deposition of Amaresh Vydyanathan, dated December 20, 2023) at 94:24-95:11.

[112] Glatter Decl. Ex. 19.

[113] In total, Dr. Ramachandran had nine Peer-Reviewed, PubMed-referenced articles and one book chapter; she was lead author of just one (a case report) in the promotion materials she submitted in 2021 .. Glatter Decl. Ex. 18; Goldstein Decl. fn. 5.

twelve were the more prestigious Peer-Reviewed, PubMed-referenced publications, for which he was the principal author of eight (8)).[114] In short, despite meeting and exceeding the guidelines for promotion set by Montefiore on the Clinical Educator track in 2021 and Montefiore's own feedback he received in 2020, not only was Dr. Goldstein not promoted, he was not even *tendered* for promotion,[115] yet peers who were not disabled (and a peer who met the bare minimum of Montefiore's own guidelines) were promoted.[116]

### 3.    Constructive Discharge

"An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily. *Terry v. Ashcroft*, 336 F.3d 128, 151-152 (2d Cir. 2003)(*citing Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 161 (2d Cir. 1998); *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996)). "[W]orking conditions are intolerable when, viewed as a whole, they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Terry*, 336 F.3d at 128, 151-152 (internal quotations omitted).

The "effect of a number of adverse conditions in the workplace is cumulative." *Chertkova*, 92 F.3d at 90. And, "the determination of whether it was objectively reasonable for an employee to feel compelled to resign in order to avoid being fired requires at least an examination of the information possessed by the employee." *Heiden v. New York City Health & Hosps. Corp.*, 20-cv-10288, 2023 U.S. Dist. LEXIS 5583, at *52-54 (denying summary judgment on constructive discharge claim where physician was concerned he would be fired for cause and his license

---

[114] Plaintiff's Material Fact 13; Goldstein Decl. ¶32 and fn.4.
[115] Plaintiff's Material Facts 10-13.
Glatter Decl. Ex. 1 (D000931-D000951 at D000932) and Glatter Ex. 4 (D002589-D002590).
[116] In addition to the limited quality of her publications, Dr. Ramachandran had never delivered an invited lecture in her career. *See* Goldstein Decl. fns. 5-6; Anthony Decl. Ex. H (D000677-D000708) at D000701 at A.5 (regarding invited lectures); Glatter Decl. Ex. 18..

threatened) (citation omitted). "When a constructive discharge is found, an employee's resignation is treated—for the purpose of establishing a *prima facie* case of employment discrimination—as if the employer had actually discharged the employee." *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325-26 (2d Cir. 1983).[117]

When viewed as a whole, actions (i) – (xii) in Section III.C, *supra,* combined with Dr. Eikermann's refusal to meet with and/or counsel Dr. Goldstein on a recurring basis (as required by the FPPE),[118] and the looming threat of termination for cause, created circumstances that were so difficult and unpleasant that a reasonable physician in Dr. Goldstein's position would feel compelled to resign. And so, too, did Dr. Goldstein.

Defendants effected a constructive discharge against Dr. Goldstein by amplifying minor matters into performance issues not mentioned in connection with the denial of his 2020 promotion or his 2021 Review.[119] Just as the *Chertkova* plaintiff avoided summary judgment on her constructive discharge claim because she was subject to an "onslaught of unfounded criticism" coupled with the prospect of for-cause termination, Defendants subjected Dr. Goldstein to a constructive discharge. *Chertkova*, 92 F.3d at 89-90. Defendants compounded Dr. Goldstein's intolerable situation by combining their groundless criticisms with a refusal to accommodate his disability which forced him to weigh his physical well-being against his livelihood.[120] The above evidence would permit a factfinder to conclude that Defendants intentionally made Dr. Goldstein's working conditions unbearable for the purpose of causing him to leave. *Id.* at 90.

Believing that involuntary, "for cause" termination was imminent, and to avoid having to

---

[117] While New York state courts have not determined the precise standard for constructive discharge under the NYCHRL, they often address constructive discharge claims using language that "mirrors the federal standard. *Molina v John Jay Inst. for Just. & Opportunity*, 2024 US Dist. LEXIS 173356, at \*32 (SDNY Sep. 24, 2024); *Tulino v. City of New York*, 813 Fed. App'x 725, 727 n.2 (2d Cir. 2020).
[118] Plaintiff's Material Fact 57.
[119] Plaintiff's Response Nos. 50, 97, 98, 104, 105, 115; Plaintiff's Material Facts 10, 11, 12, 22, 42-51.
[120] Plaintiff's Material Facts 56-61.

choose to between further damage his health or his career,[121] Dr. Goldstein was forced to make the difficult decision to provide the required 60 days' notice on February 13, 2022, thus ending his employment.[122]

### 4.    The Faragher/Ellerth Defense Does Not Apply Because Dr. Goldstein Was Denied a Reasonable Avenue for Complaint

Defendants attempt to whitewash their conduct by arguing that, on the surface, Dr. Goldstein could have gone to Human Resources.  But the department chair, Dr. Eikermann, instructed Plaintiff not to go to Human Resources.[123]  During the November 30, 2021 meeting at which the FPPE was issued, Dr. Eikermann told Dr. Goldstein to report issues directly to Drs. Eikermann and Straker *and not* to Human Resources.[124] Dr. Goldstein reasonably believed, based on the directive of his heavy-handed new department chair, that reports to Human Resources would jeopardize his job by, at a minimum, casting him in a bad light with and/or agitating Dr. Eikermann.[125] This left him with no avenue to complain about the discrimination, hostile work environment, failure to accommodate, and constructive discharge he faced.[126]

Circumstances similar to Dr. Goldstein's experience preclude application of the *Faragher-Ellerth* Defense and result in denial of summary judgment. "It is well-established that a defendant … bears the burden of proving its affirmative defense." *Leopold v. Baccarat, Inc.,* 239 F.3d 243, 245 (2d Cir. 2001).  The mere existence of policies is not sufficient, in particular where those policies are ineffective or unavailable in practice.  *Id.*  Thus, an employer's policies and training do not suffice where employees do not feel safe complaining or where complaints might lead to negative consequences.  *Mulligan v. Town of Hempstead*, 21-CV-964 (ARR)(ST), 2024 U.S. Dist.

---

[121] Plaintiff's Material Facts 56-61.
[122] Based on the April 15, 2022 date specified in the signed October 3, 2021 FPPE, Dr. Goldstein provided the 60-day notice required by applicable Montefiore policy. Plaintiff's Material Fact 61.
[123] Goldstein Decl. ¶¶ 41, 43.
[124] Anthony Decl. Ex. SS at (TR000023-TR000029, 23:2-29: 22).
[125] Goldstein Decl. ¶ 43.
[126] Goldstein Decl. ¶ 43.

LEXIS 3844, at *38 (E.D.N.Y. Jan. 8, 2024).  For example, an employer's procedures are not deemed reasonable where an employer fails to act promptly to commence an investigation. *Id.*, at *40-41.  Further, an employee prevails where the employer "failed to respond to complaints" or "effectively discouraged complaints from being f[i]led," *Id.*, at *33-34 (*citing Vance v. Ball State Univ.*, 570 U.S. 421, 448-49 (2013); *see also Gulitz v. Dibartolo*, 08-CV-2388, 2010 U.S. Dist. LEXIS 164586, at *25-28 (S.D.N.Y. Jul. 13, 2010) (*Faragher-Ellerth* defense not available where department head threatened plaintiff with job loss for pursuing complaint).

Even if the employer satisfies its initial burden of establishing the defense–which Defendants have not—the employee may offer a justification for not using the established procedures. *Mulligan* 2024 U.S. Dist. LEXIS 3844, at *43. The employee can satisfy this burden by producing evidence "that the employer has ignored or resisted similar complaints or has taken adverse actions against employees in response to such complaints." *Leopold,* 239 F.3d at 246.

Here, the evidence clearly shows that, in the context of delivering an FPPE to Dr. Goldstein, his supervisor, Dr. Eikermann, specifically discouraged him from reporting complaints. Like the *Gulitz* plaintiff, because the conversation with Dr. Eikermann arose in the same context as the FPPE delivery and discussion in which the FPPE stated failure to perform would subject him to "disciplinary action, including potential loss of employment," Dr. Goldstein reasonably perceived Dr. Eikermann's admonition against submission of any complaints to be a basis on which he might lose his job.[127]

### D.    Defendant Dr. Eikermann's Liability

For the foregoing, exhaustively detailed reasons, like Montefiore, Dr. Eikermann's actions also render him individually liable either directly as an employer under the NYCHRL or by aiding

---

[127] Goldstein Decl. ¶ 43.

and abetting violations under the NYSHRL and the NYCHRL[128] because he participated in one or more actionable discrimination claims. *Lee v. Riverbay Corp.*, 22-CV-7504-LTS, 2024 U.S. Dist. LEXIS 175514, at *47-54 (S.D.N.Y. Sep. 27, 2024)(providing detailed breakdown of individual liability under NYSHRL and NYCHRL); *Campo v. City of New York*, 19-CV-04364 (NGG)(SJB), 2022 U.S. Dist. LEXIS 60288, at *38-39, 85 (E.D.N.Y. Mar. 31, 2022)(denying summary judgment against individual defendants for aiding and abetting liability where claims against employer proceed); *Dougherty v. Ferrari Express, Inc.*, 19-CV-3961 (JMA)(ARL), 2024 U.S. Dist. LEXIS 146038, at *48-49 (E.D.N.Y. Aug. 15, 2024), (denying summary judgment against individual defendants for NYSHRL claim where court identified questions of fact exist for discrimination claims against employer). Because Montefiore is not entitled to summary judgment, neither is Dr. Eikermann.

## **CONCLUSION**

Dr. Goldstein respectfully submits that he has provided sufficient evidence to support his claims as a matter of law or, at the very least, that sufficient disputed material facts remain to preclude summary judgment. Accordingly, Defendants' motion for summary judgment should be denied.

---

[128] The Complaint (ECF No. 1) does not allege individual violations under the ADA against Dr. Eikermann because all claims relevant to the ADA are solely alleged against Montefiore where the remaining causes of actions are alleged against both Defendants. *Compare* Complaint at ¶¶ 40-43 with Complaint at ¶¶ 44-51.

Dated: January 31, 2025
      New York, New York

/s/ Denise Rubin Glatter

Alex Granovsky (AG-6962)
Denise Rubin Glatter (DG-7742)
David Byrnes (6055172)
GRANOVSKY & SUNDARESH, PLLC
48 Wall Street, 11th Floor
New York, NY  10005
646-524-6001
ag@g-s-law.com
dglatter@g-s-law.com
dbyrnes@g-s-law.com

*Attorneys for Plaintiff*