USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/24/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHELDON GOLDSTEIN,

Plaintiff,

-against-

MONTEFIORE MEDICAL CENTER and MATTHIAS EIKERMANN,

Defendants.

22 Civ. 6723 (AT) (RFT)

**ORDER ADOPTING REPORT AND RECOMMENDATION**

ANALISA TORRES, District Judge:

Plaintiff, Sheldon Goldstein, M.D., brings this employment action against Defendants, Montefiore Medical Center ("Montefiore") and Matthias Eikermann, M.D., Ph.D., under the Americans with Disabilities Act of 1990 ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). *See generally* Compl., ECF No. 1. Defendants move for summary judgment on all claims. *See* Mot., ECF No. 66; *see also* Opp., ECF No. 72; Reply, ECF No. 76. Pursuant an order of reference, the Honorable Robyn F. Tarnofsky issued a report and recommendation ("R&R") recommending denying Defendants' motion. *See* R&R at 1, ECF No. 87; Order of Reference, ECF No. 82. Before the Court are Defendants' timely objections to the R&R, *see* Objs., ECF No. 90, and Plaintiff's response, *see* Resp., ECF No. 91. For the reasons stated below, the Court ADOPTS the R&R in full and denies Defendants' motion for summary judgment.

## BACKGROUND

I. Factual Background[1]

Montefiore is a Bronx-based non-profit medical center and healthcare management company. *See* Def. 56.1 ¶ 1, ECF No. 73.[2] On September 30, 2013, the Department of Anesthesiology at Albert Einstein College of Medicine ("Einstein") hired Plaintiff, Sheldon Goldstein, M.D., as a full-time physician and Associate Professor. *Id.* ¶¶ 5–6, 23. Plaintiff worked at Montefiore until the events in this lawsuit.

In 2020, Plaintiff applied for a promotion from Associate Professor to Professor. *Id.* ¶ 23. In July 2020, the Committee of Academic Promotions (the "CAP"), considered but unanimously denied Plaintiff's application, citing the need for additional publications, and informed Plaintiff of its decision via email. *See id.* ¶¶ 24–30.

In January 2021, Naum Shaparin, M.D., became the acting Chair of the Department of Anesthesiology. *See* Def. 56.1 ¶ 36. Plaintiff then requested that Shaparin allow Plaintiff to deliver two "grand rounds talks," as well as "non-clinical time." *Id.* ¶¶ 37–39. Shaparin denied the latter request, noting the needs of the pandemic. *Id.* ¶ 39. About that same time, Montefiore received a complaint from an OB/GYN resident regarding an incident in which Plaintiff swore at the resident and argued loudly in front of patients. *See id.* ¶¶ 47–49. Montefiore took no immediate disciplinary action against Plaintiff, although someone from human resources ("HR") called Plaintiff to tell him he "could have spoken more nicely." *Id.* ¶ 50. On March 9, 2021, according to a "Biennial Medical Staff Member/Provider Evaluation" signed by Shaparin,

---

[1] The Court presumes familiarity with the facts and procedural history of this action as detailed in the R&R and, therefore, summarizes only the key facts here. *See* R&R at 2–11. The facts are either undisputed or described in the light most favorable to Plaintiff, the non-moving party. *See In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196, 209–10 (S.D.N.Y. 2022).
[2] The Court uses "Def. 56.1" to refer to Defendants' statement of facts together with Plaintiff's responses.

Plaintiff was rated "excellent" in all categories. *Id*. On April 12, 2021, Plaintiff requested that Shaparin petition the CAP for his previously requested promotion to Professor, noting his increased number of publications. *See id.* ¶¶ 44–46. Shaparin told Plaintiff to "re-apply like everyone [else] in the coming months for the 2022 cycle." *Id.* ¶ 46.

Mattias Eickermann, M.D., Ph.D., then replaced Shaparin as the permanent Chair of the Department of Anesthesiology. *Id.* ¶ 72. On April 19, 2021, Plaintiff's physician emailed Eickermann and Tracey Straker, M.D., (his immediate supervisor, *id.* ¶ 10) a medical note stating that he should not be taking overnight calls because of health-related sleep requirements. *See id.* ¶ 58. An overnight call is one that typically starts at 5:00 p.m. and runs to 7:00 a.m.; during an overnight call, doctors must make themselves available to take care of patients who need help. *See id.* ¶ 53. The next day, Shaparin and Montefiore administrator, Andrew Felder, spoke with Plaintiff, who agreed to take his overnight calls scheduled for "[the following day] and Saturday" but would not take overnight calls starting in May. *Id.* ¶ 60. Montefiore granted Plaintiff's "reasonable accommodation request" as follows:

> Dr. Goldstein will fulfill his overnight call obligations in the month of April 2021. Dr. Goldstein will not be assigned any overnight call in May or June 2021. If necessary, need for accommodation in subsequent months will be considered in June 2021. . . . In order to fulfill the normal obligatory quantity [of calls], Dr. Goldstein will take late calls and daytime weekend calls rather than overnight calls.

*Id.* ¶ 61.

About one week later, on April 28, 2021, Plaintiff met with Eikermann and made several requests, including for a promotion to Professor, non-clinical time, an appointment to a certain administrative position, and reinstatement of an employee who had been removed from leadership. *Id.* ¶ 76. Eikermann advised Plaintiff that he would look into these requests with Montefiore leadership. *Id.* ¶ 77. About this same time, Eikermann claims that he had meetings

with Montefiore leadership in which he "learned" that CAP denied Plaintiff non-clinical time in 2020 because people believed he was using non-clinical time to help further his company. *Id.* ¶ 82; *but see id.* ¶ 39 (Shaparin's statement to Plaintiff in January 2021 that he was being denied non-clinical time because of the needs of the pandemic). The parties dispute whether Eikermann began seeking out this information after his April 28 meeting with Plaintiff, or earlier, after Plaintiff made his request for accommodations. *See id.* ¶ 82. In early June, Eikermann emailed Plaintiff a letter written by a patient complimenting Plaintiff's "outstanding services." *Id.* ¶ 86.

Plaintiff's reasonable accommodation continued without issue from April to July. *See id.* ¶¶ 58–62. On June 30, Felder asked Plaintiff if he could resume overnight calls. *Id.* ¶ 63. Plaintiff reiterated his reasonable accommodation request, and his physician submitted a supplemental letter stating that Plaintiff should not be taking overnight calls because of his severe obstructive sleep apnea and use of a "BiPAP." *Id.* ¶ 64.

Toward the end of July, Eikermann began discussing with other Montefiore administrators the possibility of implementing a "Focused Professional Practice Evaluation" ("FPPE")—a performance improvement plan—for Plaintiff. *Id.* ¶ 87. The email chains in the record do not mention the reason for this. *Id.* On July 23, about one week before the 2021 CAP promotion meeting, Jonathan D. Leff, M.D., a Montefiore professor involved in professional affairs, *id.* ¶ 12, emailed Eikermann Plaintiff's professional information, such as his curriculum vitae, and wrote, "[w]e can discuss how to proceed (or not) whatever you want." *Id.* ¶ 87. The next week, on July 30, an HR employee forwarded Eikermann the FPPE template, and Eikermann asked Leff to prepare the first draft. *Id.* Eikermann ultimately did not submit Plaintiff for consideration for promotion in July 2021 for the 2022 cycle. *See id.* ¶ 89

("Defendant's failure to *even consider* Plaintiff for promotion was highly irregular" (emphasis in original)); Plaintiff's Material Fact 41.[3]

Although there is no dispute that Eikermann only gave Plaintiff the FPPE in November, the parties dispute which of the two FPPEs in the record is the FPPE Plaintiff received. *Id.* ¶ 114. There is an unsigned FPPE dated September 10, 2021, requiring Plaintiff's improvement by July 2022. *Id.* This FPPE states that Plaintiff would neither be assigned non-clinical time nor considered a candidate for promotion for the 2022 cycle. *Id.* ¶ 117. A separate FPPE dated October 3, 2021, signed by Eikermann, required improvement and review of progress by April 2022, three months before the July 2022 date in the September FPPE. *Id.* The October 3 FPPE did not outline specific examples of Plaintiff's alleged misconduct. *See id.*; *see also* Glatter Decl. Ex. 10, ECF No. 75-10 (October 3 FPPE).

On October 3, 2021, Plaintiff met with Eikermann, Leff, and Straker. *See id.* ¶¶ 90–91. During this meeting, Eikermann informed Plaintiff that he would not be considered for promotion in 2021. *See id.* ¶ 102. Eikermann mentioned that "some people perceive [Plaintiff] as sometimes not as nice or even aggressive," although Eikermann did not refer to any specific incidents other than the one from January 2021. *Id.* ¶ 98. Eikermann also raised concerns about potential, unspecified conflicts with Plaintiff's other job as CEO of a non-Montefiore medical company; Plaintiff states, however, that his role as CEO of this company was noted in his offer letter and that an independent review board cleared his research from conflicts. *See id.* ¶¶ 7, 97.

About one month later, on November 2, another doctor, Nicole Nevadunsky, M.D., emailed Montefiore leadership a complaint about Plaintiff, accusing him of raising his voice and

[3] Plaintiff's statement of additional material facts is available at ECF No. 73, after Plaintiff's counterstatement to Defendants' 56.1 statement of facts.

treating staff poorly after an issue during a medical procedure; Plaintiff then attempted to refute her complaint, alleging that Nevadunsky made a medical mistake and filings reports of his own against Nevadunsky. *See id.* ¶¶ 104–10; ECF No. 69-41.

On November 30, 2021, Plaintiff met with Eikermann, Straker, and Felder (with whom Plaintiff discussed his reasonable accommodation request). *Id.* ¶¶ 111–13. Plaintiff states that Eikermann was aggressive during this meeting. *Id.* ¶ 112. During the meeting, Eikermann presented Plaintiff the FPPE that had been prepared earlier (although the parties dispute whether it was the unsigned September 2021 FPPE or the signed October 2021 FPPE.) *See id.* ¶ 114; *see also* Plaintiff's Material Fact 55. Eikermann also told Plaintiff that he did not "stay in the chain of command" when he reported Nevandusky to HR. *Id.* ¶ 119. Although Felder told Plaintiff that there are appropriate times to go to HR, Felder and Eikermann suggested that it was inappropriate for Plaintiff to go to HR about his issues with Nevandusky. *See id.* ¶ 119–20.

The topic of HR had also come up at the October 3 meeting. In that meeting, which Plaintiff recorded, Eikermann told Plaintiff that he has a "big heart for people who have HR problems because [he has] had lots of HR problems in [his] life," further saying that he "know[s] in 90 percent of the cases [it] is bullshit," that "what you hear is exaggerated," and that "the real task is not getting written up." *Id.* ¶ 113.

In December 2021, Montefiore assigned Plaintiff to multiple overnight calls for January 2022. *See id.* ¶ 66. In response, on December 28, Plaintiff's doctor submitted another note reiterating that it was medically necessary for Plaintiff not to take overnight calls because he "requires a regular sleep-wake pattern" due to "chronic, severe obstructive sleep apnea." *Id.* ¶ 67. Plaintiff, however, ultimately agreed to cover the two January overnight calls "because of the pressure he felt and his concern that he would be terminated following the November 30,

2021 meeting." *Id.* ¶¶ 68, 71; *see* Goldstein Decl. ¶ 21, ECF No. 74. The next day, notwithstanding Plaintiff's email from his physician, Straker emailed Plaintiff about a backup overnight shift on President's Day in February 2022. *See id.* ¶ 69. Again, Plaintiff agreed to take the shift, feeling pressure from the FPPE and the April 2022 date for progress. *Id.* ¶ 71.

On February 13, 2022, Plaintiff tendered his 60 days' written notice of resignation for April 13, 2022—when his progress would be evaluated under the October 3 FPPE. *See id.* ¶ 130.

II. Procedural History

Plaintiff commenced this action on August 8, 2022. *See* Compl. Defendants answered, *see* ECF No. 14, and, after discovery, moved for summary judgment on all claims. *See* Mot. After resolving Defendants' motion to exclude certain medical expert testimony, *see* Daubert Order, ECF No. 86, Judge Tarnofsky issued the instant R&R, recommending that Defendants' motion for summary judgment be denied, *see* R&R at 1.

## DISCUSSION

I. Legal Standards

A. Summary Judgment

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict" for the nonmovant. *Anderson*, 477 U.S. at 248.

The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact by citing specific evidence in the record. Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). But, if the

nonmovant bears the burden of proof at trial, the movant may satisfy its initial burden by demonstrating that the nonmovant cannot produce admissible evidence to support the existence of a triable issue of material fact. *See Celotex*, 477 U.S. at 322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). If the movant meets its initial burden, the burden shifts to the nonmovant to establish a genuine dispute of material fact. *See, e.g.*, *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105. "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (citation omitted). In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmovant and draws all factual inferences in the nonmovant's favor. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997).

B. Standard of Review

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The Court may adopt those portions of the R&R to which no objection is made "as long as no clear error is apparent from the face of the record." *Oquendo v. Colvin*, No. 12 Civ. 4527, 2014 WL 4160222, at *2 (S.D.N.Y. Aug. 19, 2014) (citation omitted). An R&R is clearly erroneous if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citation omitted); *see also Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009).

A proper objection to an R&R must be timely and specific. "In order to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district

court of the true ground for the objection." *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025) (quoting *Martin v. Duffy*, 858 F.3d 239, 245 (4th Cir. 2017)). Additionally, an objection "generally may not raise new arguments not previously made before the magistrate judge." *Id.* at 359. When a party properly objects to an R&R, the district court reviews those arguments *de novo*. *Id.* at 361.

II. Defendants' Objections

A. Failure to Accommodate Claim

The Court adopts Judge Tarnofsky's recommendation that the Court deny Defendants summary judgment on Plaintiff's failure to accommodate claim. *See* R&R at 12–19.

To establish a failure to accommodate claim under the ADA, NYSHRL and NYCHRL, Plaintiff must show that "(1) [he] is a person with a disability under the meaning of the [relevant statute]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [he] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006) (citation omitted); *see also Lawtone-Bowles v. City of New York*, No. 17 Civ. 8024, 2019 WL 652593, at *6 (S.D.N.Y. Feb. 15, 2019) ("Courts apply the same standard for failure to accommodate cases under the ADA, Rehabilitation Act, NYSHRL, and NYCHRL."). "After this *prima facie* case is established, an employer can defeat such a claim if it shows '(1) that making a reasonable accommodation would cause it hardship, and (2) that the hardship would be undue.'" *Quadir v. N.Y. State Dep't of Lab.*, No. 13 Civ. 3327, 2016 WL 3633406, at *2 (S.D.N.Y. June 29, 2016) (citation omitted).

Defendants first object to the R&R because the "undisputed record establishes that Montefiore granted Plaintiff's reasonable accommodation request." Objs. at 3. Defendants

argue that after Plaintiff made the request, he was only assigned overnight calls that he expressly agreed to. *See id.* Plaintiff argues, however, that Defendants failed to reschedule his calls in January and February 2022 despite a note from his physician and that, given this and the FPPE, he only accepted the overnight calls under "extreme pressure." *See* Def. 56.1 ¶¶ 68–69, 71, 114.

The Court agrees with the R&R's analysis that a reasonable jury could conclude that Montefiore failed to reasonably accommodate Plaintiff by failing to reschedule his overnight calls. The record shows that Montefiore did not modify its schedule and, in fact, asked Plaintiff to take overnight calls one day after he communicated to Montefiore through his physician that he should not take them. *See* Def. 56.1 ¶¶ 67–69. The Court rejects Defendants' contention that there is no evidence from which a reasonable factfinder could find that Plaintiff's agreement to take the calls was coerced. *See* Objs. at 4. Even though Plaintiff accepted the overnight assignments, and did not tell Montefiore that he was accepting them under pressure, a jury could find that a reasonable person would feel pressured into taking them. Not only had Montefiore ignored Plaintiff's physician's letters, but one month earlier, Eikermann delivered a FPPE to Plaintiff, suggesting his job was in jeopardy, with Plaintiff being required to demonstrate improvement in his perceived attitude. *See id.* ¶ 114. The record also includes evidence that Eikermann initiated the FPPE process and decided that Plaintiff would not be considered for promotion only after Plaintiff renewed his reasonable accommodation request in July 2021. *See id.* ¶¶ 62–63, 82. Construing the facts in the light most favorable to Plaintiff, the Court rejects Defendants' claim that Plaintiff "offers nothing beyond his own conjecture that future discipline might occur" if he refused the overnight calls. Objs. at 5. The Court agrees, therefore, with Judge Tarnofsky that a "reasonable factfinder could conclude that Defendants failed to provide Plaintiff with a meaningful accommodation for his disability by failing to revise the schedule to

take him off overnight calls in January and February 2022, notwithstanding his acquiescence, [because] a reasonable factfinder could find that Plaintiff's agreement to take the overnight calls was [pressured.]" R&R at 18.

Next, Defendants object to the R&R's analysis of Plaintiff's failure to accommodate claim on the grounds that the record "contains no medical testimony, contemporaneous complaints of harm or documentation showing that continued work without the accommodation created risk or injury." Objs. at 6. Not so. The record contains three letters from Plaintiff's physician, including a December 28, 2021 letter "emphasiz[ing] that he should not be taking overnight call." Def. 56.1 ¶ 64; *see also* ECF No. 69-31 at D000779–D000780. Given the medical evidence in the record, there is a material dispute of fact as to whether Plaintiff could perform the essential elements of his job without the reasonable accommodation. *See Kleyman v. SUNY Downstate Med. Ctr.*, No. 18 Civ. 3137, 2020 WL 5645218, at *9–10 (E.D.N.Y. Sept. 21, 2020). This objection is also overruled.

Defendants do not object to other aspects of the R&R's analysis of Plaintiff's failure to accommodate claim. Finding no clear error in those portions of the R&R, the Court adopts the R&R in full as to that claim. *See* R&R at 12–15.

C. Disability Discrimination Claims

Plaintiff also brings a disability discrimination claim under the ADA, NYSHRL, and NYCHRL. The Court adopts the R&R with respect to these causes of action.

A plaintiff bringing a disability discrimination under the ADA must show that: (1) the employer is subject to the ADA; (2) the employee was disabled; (3) the employee was qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) the employee suffered adverse employment action because of a disability. *See Woolf v. Strada,*

949 F.3d 89, 93 (2d Cir. 2020). NYCHRL claims are generally construed more liberally than ADA claims. *See Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015) ("Interpretations of state and federal civil rights statutes can serve only as a floor below which the NYCHRL cannot fall." (cleaned up)). To state a discrimination claim under the NYCHRL, the plaintiff "must only show differential treatment of any degree based on a discriminatory motive." *Gorokhovsky v. New York City Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014). In 2019, "New York amended the NYSHRL . . . to render the standard for claims under that statute 'closer to the standard of the NYCHRL.'" *Murillo-Roman v. Pension Boards - United Church of Christ*, No. 22 Civ. 08365, 2024 WL 246018, at *12 n.7 (S.D.N.Y. Jan. 23, 2024) (quoting *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021)).

1. Adverse Action

Plaintiff's disability discrimination claims proceed under multiple theories of adverse action, including Defendants' failure to give him non-clinical time, failure to promote him, and his constructive discharge. Judge Tarnofsky concluded that Plaintiff had sufficiently demonstrated an adverse action with respect to these actions. *See, e.g.*, R&R at 26–36; 42. Defendants only object to the R&R's adverse action analysis regarding constructive discharge. *See* Objs. at 7–10. Finding no clear error in the R&R's determination that a failure to give non-clinical time and a failure to promote can amount to adverse employment action within the meaning of the ADA, NYSHRL, and NYCHRL, the Court adopts the R&R on these points and concludes that Plaintiff has shown an adverse employment action for his disability discrimination claim to proceed on these theories.

Defendants argue that the R&R improperly held that Plaintiff could also proceed on a theory of constructive discharge, maintaining that the FPPE was achievable and Plaintiff's

working conditions were not intolerable, as required by Second Circuit caselaw. *See* Objs. at 7–10; *see also Felty v. Regeneron Pharms., Inc.*, No. 18 Civ. 5667, 2021 WL 860379, at *20 (S.D.N.Y. Mar. 8, 2021) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000)). "An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Terry v. Ashcroft*, 336 F.3d 128, 151–52 (2d Cir. 2003) (citations omitted).

Reviewing the R&R *de novo*, although a close case, the Court agrees that drawing all inferences and resolving all ambiguities in Plaintiff's favor, a juror could find that a person in Plaintiff's shoes—an experienced and accomplished professional who, in a span of a few months, had been denied reasonable accommodations, placed on an FPPE, denied non-clinical hours, and denied consideration for an academic appointment he had been considered for a year earlier—would have found his working conditions so intolerable that he felt compelled to look for a new job, rather than risk a for-cause termination.

Defendants claim that Judge Tarnofsky improperly relied on Plaintiff's placement on the FPPE, arguing that placement on an FPPE "does not, as a matter of law, amount to constructive discharge." Objs. at 8 (citing *Jackson v Sleepy's, LLC*, No. 13 Civ. 2086, 2016 WL 1223452, at *6 (E.D.N.Y. Mar. 29, 2016)). But the R&R noted several other relevant considerations. For example, the R&R concluded that a reasonable jury could find that Defendants "did not accommodate [Plaintiff's] disability in a way that preserved his health . . . and belatedly gave him a performance plan, saying that failure to improve could lead to termination, without giving him sufficient time to make the required improvements." R&R at 35 (citing Def. 56.1 ¶¶ 26, 54, 58–59, 82, 114). These circumstances can sustain a finding of constructive discharge. *See also*

*Durick v. New York City Dep't of Educ.*, 202 F. Supp. 3d 277, 294 (E.D.N.Y 2016) (observing that a failure to accommodate created a genuine issue of material fact as to whether the plaintiff's working conditions were so intolerable that the plaintiff would have felt compelled to resign). Moreover, whether or not the FPPE "offered Plaintiff a 'roadmap' to succeed" or was "impossible to satisfy" is ultimately a fact-heavy question for the jury. Objs. at 9. The Court, therefore, overrules Defendants' objection and agrees with the R&R that there exist triable issues regarding constructive discharge.[4]

2. Causation

Next, Defendants object to the R&R's conclusion as to causation. *See* Objs. at 11–17. An ADA discrimination claim requires proof that the plaintiff's disability was the but-for cause of the challenged employment action. *See Natofsky v. City of New York*, 921 F.3d 337, 349–50 (2d Cir. 2019). Although the NYSHRL and NYCHRL are more lenient, a plaintiff must still establish differential treatment based on a discriminatory motive. *See Gorokhovsky*, 552 F. App'x at 102 (analyzing NYCHRL); *see also Weekes v. JetBlue Airways Corp.*, No. 21 Civ. 1965, 2022 WL 4291371, at *7-8 (E.D.N.Y. Sept. 16, 2022) (analyzing NYCHRL and NYSHRL).

Defendants contend that the R&R disregarded their nondiscriminatory explanations for their actions, *see* Objs. at 14–15, and improperly relied on temporal proximity alone, *see id.* at 16. Reviewing *de novo*, the Court overrules Defendants' objections. Judge Tarnofsky relied not only on the timing of Plaintiff's disability disclosure and accommodation request but also on Defendants' inconsistent explanations and the full chronology of events. *See* R&R at 37–42. The Court adopts the R&R's analysis. Although the record is consistent with persuasive,

[4] The dispute over Plaintiff's constructive discharge may ultimately be immaterial, as it is not Plaintiff's only theory of adverse action and, accordingly, Plaintiff may not choose to proceed on a theory of constructive discharge at trial.

nondiscriminatory explanations for Defendants' actions, *see, e.g.*, Objs. at 13–15, a reasonable jury could find Defendants' proffered explanations pretextual.

After Plaintiff revealed his disability in April 2021, and renewed his request for accommodations in July 2021, Montefiore did not consider him for the same promotion it had the year before, denied him non-clinical days, and placed him on a FPPE, with less than a six-month turnaround time for improvement. *See* R&R at 40. Although Defendants refer to complaints about Plaintiff's professionalism, *see* Objs. at 15, they can only identify one complaint January 2021 and one in November 2021, *see* Def. 56.1 ¶ 87. With respect to the January 2021 incident, no immediate disciplinary action was taken, and, in an evaluation dated March 9, 2021, Shaparin rated Plaintiff "excellent" in every category, including professional demeanor. *See* Def. 56.1 ¶¶ 50, 98, 115. As to the denial of non-clinical days, Shaparin told Plaintiff in January 2021 that Plaintiff could not have non-clinical days because of the needs of pandemic, without raising other concerns. *Id.* ¶¶ 39, 82. And with respect to Plaintiff's academic promotion, Montefiore did not even submit Plaintiff for consideration for a promotion in 2021, even though he had been considered for one in 2020 and was told he was denied the promotion because he needed more publications—a metric he had arguably improved upon since then. *See id.* ¶¶ 27–29; Plaintiff's Material Facts 11, 33, 39; *see also* R&R at 37–42.

Ultimately, a jury could find that Eikermann passed Plaintiff over for consideration for an academic promotion and began to consider Plaintiff's placement on an FPPE in July 2021, the same month Plaintiff renewed his request for a reasonable accommodation, *see* Def. 56.1 ¶¶ 62–64, 87. A jury could find that Eikermann made these decisions, even though there had been no new performance complaints against Plaintiff since January 2021, Plaintiff received an "excellent" performance review in March 2021, and the November 2021 incident had not

occurred yet. Moreover, a jury could find that although Eikermann gave Plaintiff the FPPE on November 30, the FPPE had been prepared and signed at least one month before the November 2021 incident. *See id.* ¶ 114. Therefore, a jury could find that Defendants' proffered explanations, *see* Objs. at 15, are pretextual. Defendants' objections essentially require the Court to choose between the parties' accounts of certain incidents, weigh evidence, and make credibility determinations, which is inappropriate on a motion for summary judgment.

3. ADA Hostile Work Environment Claim

Defendants argue that they are entitled to summary judgment on Plaintiff's hostile work environment claim because their conduct was neither severe or pervasive nor connected to Plaintiff's disability. *See* Objs. at 17–23. The Court overrules Defendants' objections. Although a close case, as with the Court's analysis of the constructive discharge claim, a reasonable jury could find a sufficiently hostile environment based on the combined effect of requiring Plaintiff to stay on overnight calls despite his reasonable accommodation requests, declining to even consider Plaintiff for a promotion, and imposing the FPPE. *See* R&R at 48–50. And, as the Court noted earlier, reasonable jurors could find that the chronology of events and Defendants' inconsistent explanations link this work environment to Plaintiff's disability disclosure and request for accommodations.

Finally, Defendants object to Judge Tarnofsky's conclusion that factual issues preclude summary judgment on their *Faragher/Ellerth* affirmative defense. *Id.* at 50–52; *see* Objs. at 21. The *Faragher/Ellerth* affirmative defense is applicable where "no tangible employment action is taken" and "the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any [discriminatory] behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventative or corrective

opportunities that the employer provided." *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 40 (E.D.N.Y. 2013) (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013)), *aff'd,* 29 F. Supp. 3d 142 (E.D.N.Y. 2014). Here, Defendants point to the fact the Plaintiff never went to HR to complain about Eikermann.

First, the *Faragher/Ellerth* defense does not apply "when the supervisor's harassment culminates in a tangible employment action," *Edrisse v. Marriott Int'l, Inc.*, 757 F. Supp. 2d 381, 388 (S.D.N.Y. 2010) (citation omitted), such as "a discharge, demotion, or undesirable reassignment," *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). Therefore, the defense is only applicable to the extent Plaintiff brings a hostile work environment claim distinct from his discrimination claims stemming from the adverse actions discussed above. The defense also does not apply to Plaintiff's NYCHRL claim. *See Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 479 (2010).

Second, like Judge Tarnofsky, the Court finds that Plaintiff has raised a material dispute of fact as to whether Eikermann discouraged Plaintiff from bringing complaints to HR. *See* R&R at 51–52. Although Defendants have provided evidence to support the defense—namely, that Plaintiff had made HR complaints before and that Montefiore had a nondiscrimination policy—Plaintiff has countered with evidence that Eikermann instructed him to go to Straker, rather than directly to HR with certain complaints, and, in the October 3 meeting, spoke to Plaintiff in somewhat disparaging terms about HR. *See id.*; Def. 56.1 ¶¶ 113, 119–20. The Court, therefore, finds that Plaintiff has raised a genuine issue of material fact as to whether the *Farragher/Ellerth* affirmative defense is applicable and adopts the R&R on this point.

E. NYSHRL and NYCHRL Claims against Eikermann

Defendants argue that the Court should dismiss the NYSHRL and NYCHRL claims against Eikermann for the same reasons that the Court should dismiss the claims against Montefiore.[5] "Defendants do not argue that Plaintiff has failed to demonstrate sufficient involvement by []Eikermann with Plaintiff's employment at Montefiore, such that summary judgment should be granted against Plaintiff on his claims against []Eikermann even if Plaintiff's claims against Montefiore survive summary judgment." R&R at 54; *see also* Objs. at 23. Because Plaintiff's underlying NYSHRL and NYCHRL claims against Montefiore survive, his claims against Eikermann likewise survive. *See* R&R at 53–54.

[5] The NYSHRL and NYCHRL each "provide for individual liability for persons who aid, abet, incite, compel, or coerce the doing of any of the acts forbidden thereunder, or attempt to do so." *Molina v. John Jay Inst. for Just. & Opportunity/City Univ. of New York*, No. 23 Civ. 1493, 2024 WL 4276913, at *14 (S.D.N.Y. Sept. 24, 2024). "The aider and abettor need not have had an employer-employee or supervisory relationship with the plaintiff," but must have (1) "actually participate[d] in the conduct giving rise to the discrimination" and (2) "share[d] the intent or purpose of the principal actor." *Id.*

## CONCLUSION

For the foregoing reasons, the Court OVERRULES Defendants' objections to the R&R and ADOPTS the R&R in full.[6]

By **October 15, 2026,** the parties shall file a joint letter stating whether they request a settlement conference before the Honorable Robyn F. Tarnofsky or a referral to the Southern District's mediation program. If the parties wish to proceed directly to trial, by **November 16, 2026**, they shall file their required joint pretrial order and other pretrial filings in accordance with Rule V(B)–(D) of the undersigned's Individual Practices in Civil Cases.

SO ORDERED.

Dated: September 24, 2026
New York, New York

ANALISA TORRES
United States District Judge

[6] The Court reviews those portions of the R&R to which no objection was made for clear error and finds none.